UWHIPPLE, J.
In this workers’ compensation case, the employer appeals a judgment of the Office of Workers’ Compensation (“OWC”) judge finding the claimant did not commit fraud and awarding the claimant attorney’s fees. For the following reasons, we affirm the judgment, as amended.
FACTS AND PROCEDURAL HISTORY
Claimant, Patrick Dominic, was employed by BREC as a dump truck driver on November 2, 1999, when he injured his back as he stepped out of the cab of his truck and slipped off of the second step. The accident occurred when his left leg was still in the truck while his right leg slipped off to the ground and twisted. Dominic immediately felt a “pop” and “a cool, then burning” sensation in his back. By that evening, Dominic was experiencing severe pain down his right leg and was unable to move it. Later that evening, he went to the emergency room at Our Lady of the Lake Hospital seeking emergency treatment. After examining Dominic, the emergency room physician recommended that Dominic obtain follow-up care with an orthopedic or other specialist. Dominic was then seen by Dr. John E. Clark, a physician recommended by BREC.
Over the course of the next two years, Dominic continued to experience pain in his right leg and lower back. During this time and leading up to the termination of benefits giving rise to this litigation, Dominic attempted and was able to work at times. However, at other times, as his *75 back problems and pain exacerbated, he was unable to work. During these periods, BREC received the necessary forms and Dominic received temporary total disability benefits or supplemental benefits, depending on the work and his circumstances. Testing and MRI results eventually revealed that Dominic had sustained a disc herniation at the L-5, S-l level. While being treated by Dr. | sCIark, Dominic underwent and completed physical therapy, utilized pain medication, and received three epidural steroid injections in an attempt to receive relief without resort to surgery. All of these efforts were to no avail. Thus, Dr. Clark referred Dominic for further evaluation.
Surgery was ultimately recommended by a neurosurgeon referral, Dr. James A. Poche, Jr., and an orthopedic surgeon, Dr. Robert J. Nicholson, Jr. A lumbar laminec-tomy and partial discectomy at the L-5, S-1 level on the right side was recommended, and after approval by the employer, was scheduled with Dr. Nicholson for December 18, 2001. Prior to surgery, however, Dominic found blood in his stool and elected to postpone the surgery out of concern for his unresolved medical condition and family concerns. In early January of 2002, Dominic attempted to reschedule the surgery with Dr. Nicholson when he discovered that Dr. Nicholson was no longer practicing medicine. At this time, Dominic was receiving benefits consisting of weekly indemnity benefits and payment of on-going medical expenses to his health care providers.
However, Dominic’s workers’ compensation indemnity benefits were discontinued by BREC as of February 28, 2002 based on the recommendation of the claims adjuster. BREC later contended that its decision to discontinue weekly indemnity benefits and/or further medical at that time was justified based on ninety minutes of video tape of Dominic shot on two separate days in March of 2002. Additionally, BREC contended that discontinuance and/or forfeiture of all benefits was warranted, alleging that the tapes proved Dominic was working, while failing to report his receipt of any wages.
Dominic filed a disputed claim for compensation, in which he alleged BREC had wrongfully refused to authorize further medical treatment and was arbitrary and capricious in failing to timely pay indemnity benefits. The Lmatter was heard at length before an OWC judge on April 28, 2003 and July 16, 2003. Oral reasons were issued and a judgment was signed on July 24, 2003, finding: (1) that Dominic was injured in an accident during the course and scope of his employment with BREC on November 2, 1999; (2) he was not entitled to further indemnity benefits, at that time, ie., subsequent to February 28, 2002, the stipulated date of last voluntary payment of such benefits by BREC up to the date of trial; (3) he was entitled to evaluation and treatment by a physician of his choice regarding his need for lumbar surgery to be authorized and paid for by BREC; (4) he was entitled to $500.00 in attorney’s fees pursuant to LSA-R.S. 23:1201.2, for BREC’s premature discontinuance of indemnity benefits on February 28, 2002; (5) he was not entitled to penalties and attorney’s fees pursuant to LSA-R.S. 23:1201 and 23:1201.2 for BREC’s alleged continuing failure to pay benefits; and (6) Dominic had not violated LSA-R.S. 23:1208 by willfully making false statements in order to obtain workers’ compensation benefits. Thus, BREC’s claim for restitution plus payment of a civil penalty pursuant to an alleged LSA-R.S. 23:1208 violation was denied.
BREC filed the instant suspensive appeal contending that the OWC erred in failing to find that Dominic had committed *76 fraud pursuant to LSA-R.S. 23:1208 and in awarding him $500.00 as attorney’s fees.
DISCUSSION
Louisiana Revised Statutes 23:1208 provides in pertinent part, “It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.” The issue of whether an allegedly false statement or misrepresentation by an employee requires forfeiture of workers’ compensation benefits pursuant to | BLSA-R.S. 23:1208 is one of fact, which is not to be reversed on appeal absent manifest error. Leonard v. James Industrial Constructors, 2003-0040, p. 6 (La.App. 1st Cir.5/14/04), 879 So.2d 724, 729 (en banc), writ denied, 2004-1447 (La.9/24/04), 882 So.2d 1139. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court might feel that its own evaluations and inferences are reasonable. Chauvin v. Southern Technology & Services, Inc., 2002-1871, p. 6 (La.App. 1st Cir.6/27/03), 858 So.2d 519, 522. The party who requests that benefits be forfeited must show that the claimant’s statements were not only false, but must also show that the statements were willful and deliberately made with the intent to obtain benefits. Williams v. Sheridan Construction Company, Inc., 2000-1697, pp. 6-7 (La.App. 1st Cir.9/28/01), 811 So.2d 8, 12-13, writ denied, 2001-2865 (La.1/11/02), 807 So.2d 239.

BREC’S LSA-R.S. 23:1208 CLAIM

BREC argues that Dominic lied about receiving wages while working for his father and thus forfeited his right to benefits. Dominic strenuously maintained that he had not been performing any work for which he earned unreported wages while receiving indemnity benefits. Both Dominic and his father testified that Dominic was not earning unreported wages while receiving compensation benefits. Dominic explained his past work history in detail and testified that he assisted his father by performing light duties solely as an act of appreciation to his father for allowing Dominic to live with him while unemployed (and after separating from his wife). The OWC accepted this testimony and specifically found the testimony of both Dominic and his father to be credible.
|fiBREC argues that portions of the videotaped surveillance introduced at trial clearly show that Dominic is able to perform activities that he denies he is capable of performing and prove that he misled his treating physician in violation of LSA-R.S. 23:1208. After reviewing the videotapes, the testimony at trial, and the deposition testimony of Dominic’s treating physician, Dr. John E. Clark, and surgeons, Dr. James A. Poche, Jr. and Dr. Robert J. Nicholson, Jr., the OWC judge found no 23:1208 violation. On review, we find no error in this determination.
In rejecting BREC’s LSA-R.S. 23:1208 claim against Dominic, the OWC judge stated: “I do not feel Mr. Dominic deliberately and willfully ... made misrepresentations for the purpose of obtaining benefits. Are there blank spots? Yes. Are they misrepresentations? I am not convinced there are.” In assessing the evi-dentiary value of the tapes, which she obviously found to be of limited value, the OWC judge noted that the “work” Dominic performed in the April 23, 2002 video tape of him helping construct a fence was done using upper body strength and that he obviously was moving very slowly. After considering the testimony of the treating *77 physician and surgeons, and after reviewing the videotapes, and Dominic’s testimony regarding his activities and abilities and his pain medication during the period of time shown in the videotapes, the OWC judge stated:
I watched the whole thing, he was doing it for like an hour and a half, he only filled in like four postholes. It seemed to me it took him way too long. Yes, he was fluid but he was moving very slowly, and he was not doing anything major heavy.... I found him credible. I found that his explanations were credible, but that’s strictly a credibility call.
After a thorough review of the record, we find no error in the OWC judge’s determination that Dominic did not commit fraud or deliberately misrepresent his condition for the purpose of unlawfully obtaining benefits | pursuant to LSA-R.S. 23:1208. Dr. Clark testified after viewing the videotapes that although Dominic may be able to bend or stoop and use a shovel, the fact that Dominic has a disc herniation at the L-5, S-l level should not be discounted. He explained that the types and levels of activity Dominic could engage in necessarily would depend on the amount of pain he is experiencing at the time. Further, he opined that the pain medication he prescribed would allow Dominic to perform certain work activities at times.
Likewise, Dr. Nicholson testified that Dominic’s intermittent complaints and his objective physical findings on MRI were consistent and indicated irritation of the S-l nerve root from a disc herniation at L-5, S-l. Dr. Nicholson likewise discounted the value of the tapes in assessing Dominic’s true abilities and condition at any given time absent knowledge of whether Dominic was in pain while performing the activity or whether he was on pain medication and if so, how much pain medication he was then taking. He felt the tapes were only relevant insofar as reevaluation of Dominic before performing surgery. He specifically testified that Dominic was not malingering or falsifying the symptoms.
Given the lay and expert testimony, we are unable to determine that the OWC judge erred in rejecting BREC’s claim that Dominic made false statements for the purpose of obtaining benefits or payment. After careful review of the testimony, depositions, videotapes and evidence introduced herein, and specifically considering the inconsistencies alleged by BREC in brief, we find that her factual determinations are amply supported by the record and are neither clearly wrong nor manifestly erroneous. Given the credibility calls she was entitled to make as the trier of fact, we find no error in her determinations. Thus, these arguments lack merit.
| ^ATTORNEY’S FEES
The OWC judge awarded $500.00 in attorney’s fees pursuant to LSA-23:1201.2 for BREC’s arbitrary and capricious termination of Dominic’s benefits for one month’s time.[1] The OWC judge based the award on her determination that the *78 March 2002 video failed to “prove anything with regard to [Dominic’s] working for a wage.” Thus, she concluded, the adjuster’s termination of benefits on February 28, 2002 was premature and unfounded. The OWC judge found that although the later video of April 23, 2002, showing Dominic working on a fence, combined with Dominic’s deposition testimony in July 2002, could provide a legitimate basis upon which benefits could be controverted, and, in fact, terminated, this later-acquired information could not provide a basis for BREC’s earlier termination.
Nonetheless, BREC argues on appeal that the award of attorney’s fees is internally inconsistent and contrary to other findings. In support, BREC argues that the OWC judge noted in oral reasons that indemnity benefits were not due on February 28, 2002 because Dominic had previously declined a park ranger position offered to him by BREC, stating that Dominic “failed to meet [his] burden of proof that he is entitled to benefits after refusing that job.” BREC contends that the OWC judge thus erred in finding that the February 28, 2002 termination of benefits was premature.
| flDominic, however, counters in brief that the OWC judge stated at trial that Dominic was not entitled to continuing wage benefits as of the date of trial, noting that Dominic had earlier refused a park ranger position offered by BREC. However, Dominic argues that the $500.00 award for attorney’s fees was proper and was based on the premature and improper termination of the right to continued medical benefits, which the judge agreed he was lawfully entitled to continue to receive, even through trial, given his medical condition and need for surgery.
On review, we find no merit to BREC’s claim that the award was improper. In addressing whether indemnity benefits were owed, the OWC judged stated:
The next issue is whether or not any indemnity benefits are owed after February 28 of 2002.... It is my position, I agree with [counsel for BREC] he is not entitled to any indemnity benefits at this time because he turned down that park ranger job. That park ranger job fits the last, even the latest that I could find restrictions that he got per Dr. Clark, and that was no long driving, no heavy lifting. I did not see anything in the doctors’ depositions that said he should be not doing anything, that he is totally disabled. I didn’t see anything in any of the doctors’ records or depositions that said, that put any more restrictions on him than that. And in park ranger job he would not have been doing any long driving or heavy lifting.
The park ranger job, quite frankly, I think, and I am not criticizing him for trying to do better, for trying to do the long haul trucking. I understand that’s easier on him than the dump truck. But BREC can’t be responsible any more when they offered him a job in those restrictions at the ninety percent of the PIW, pre-injury wage, and he chose not to take it.... I do think his continuing to try to do the long haul trucking in pain that’s what causing him, aggravated him. That’s not to say doing the park ranger job may not have. I am saying I am not going to fault BREC when they offered him a job that had been signed off, would have put him at at least 90 percent of his PIW, and he chose not to take it. I can’t find anything in the doctors’ records that say today he couldn’t be doing that park ranger job.
(Emphasis added.)
[[Image here]]
ImHowever, the OWC judge then stated, with regard to determination of medical benefits:
*79 I am going to finish in this way. He is entitled to have the surgery, he is entitled to have a physician of his choice, if first he needs to go back to a physician of his choice that could do the surgery if they thought it was warranted, someone who does surgery, back surgery. Be evaluated again. They are probably going to need another maybe MRI or whatever to see if he needs the surgery. He is entitled to medical treatment.
I agree now in part with [claimant’s counsel] with regard to the termination of benefits of the date the benefits were terminated. I feel he is correct, [BREC’s adjuster] did not have good basis to terminate benefits of 2-28-02 until you took the deposition in July.... the standard for terminating benefits is arbitrary and capricious. I would say that on April 23, 2002 they would not be arbitrary and capricious in terminating benefits because April 23, 2002 — - I am not impressed with the March video. The March video was him hanging around outside a building, going in and out a couple of times. He is not carrying anything heavy. He takes off a jump suit. Does not prove anything with regard to his working for a wage. If he is helping his daddy because his daddy is supporting him that’s not working for a wage in my book. But on 4-23-02 when he is doing the fencing work and utilizing the wheelbarrow and shoveling cement into the fence postholes and patting them down ... it doesn’t concern me all that much but I can see how that would concern [BREC’s adjuster] that this gentleman is suppose to be needing back surgery, and he is able to move so fluidly; albeit very slowly, fluidly. And doing something in terms of the way he moves that someone in [the adjuster’s] position would think he shouldn’t be able to do.
So at that point April 23 of 2002 I feel [the adjuster] has good basis, and with the deposition better basis, supported by the deposition. When he made the decision in March based on the March video I would say there is enough maybe to question but not to terminate. So you are basically looking at one month’s worth of time in which I would feel the follow-up video gave him a little more to hang his hat on. So a penalty for a month’s worth of time is 500 bucks in terms of attorneys’ fee. There is no penalty involved talking termination, it is just an attorneys’ fee.
(Emphasis added.)
Nonetheless, as BREC correctly notes, the written judgment provides as follows, concerning the termination of indemnity benefits and award of attorney’s fees:
JjjIT IS FURTHER ORDERED, ADJUDGED AND DECREED that PATRICK DOMINIC did not carry his burden of proof in reference to entitlement to any indemnity benefits subsequent to February 28, 2002, the stipulated date of last payment of voluntary benefits by BREC, and therefore Judgment is hereby entered in favor of BREC, and against PATRICK DOMINIC, denying indemnity benefits subsequent to February 28, 2002;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that PATRICK DOMINIC is awarded FIVE HUNDRED AND NO/100 ($500.00) DOLLARS in attorney’s fees, as per La. R.S. 23:1201.2, for BREC’s premature discontinuance of indemnity benefits on February 28, 2002.
(Emphasis added.)
Because the record supports the OWC judge’s finding that an award of attorney’s fees was proper, based on the arbitrary termination of medical benefits, we amend *80 the decision to so provide, and affirm as amended.
CONCLUSION
For the above reasons, we affirm the July 24, 2003 decision of the OWC finding that Dominic did not violate LSA-R.S. 23:1208. We amend the decision to reflect that the award of attorney’s fees is affirmed for BREC’s arbitrary and premature termination of medical benefits.
Costs of this appeal are assessed against appellant, BREC.
AFFIRMED, AS AMENDED.

. Although LSA-R.S. 23:1201.2 was subsequently repealed by Acts 2003, No. 1204, § 2, at the time of trial, the statute provided as follows:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.