THERIOT, J.
lain this workers’ compensation case, an employer appeals a judgment awarding indemnity benefits to the injured employee, and the employee answers the appeal. We affirm and deny the employee’s request for additional attorney fees for work done on this appeal.
FACTS AND PROCEDURAL HISTORY
Keri Chaney Jackson,[1] was injured in the course and scope of her employment as a Licensed Practical Nurse (LPN) with Our Lady of the Lake Hospital, Inc. (“OLOL”) on December 8, 2006. On that date, Mrs. Jackson was plugging in a laptop computer when she received an electric shock. The electricity traveled through her right hand, up her arm, and out her left hand. She was seen immediately in the emergency department, and later followed up with an occupational physician at OLOL. As a result of the accident, Mrs. Jackson developed Complex Regional Pain Syndrome (“CRPS”), which caused numbness, burning, muscular pain, and an inability to grab and hold things with her right hand. She was treated with physical therapy and pain medication. She also attempted nerve blocks and a spinal cord stimulator trial, which were unsuccessful in alleviating her pain, and was eventually referred for pain management. She also experienced nightmares about the accident and developed a fear of electrical appliances and outlets.
Mrs. Jackson later developed radiating leg pain. She underwent an MRI and EMG and was diagnosed with lumbar ra-diculitis. Mrs. Jackson related the leg pain to her workplace accident, but OLOL took the position that Mrs. Jackson’s leg pain was caused by a fall she sustained at an LSU football game in 2007. OLOL denied payment for treatment for her leg pain [Sbased on a second medical opinion that it was unrelated to the workplace accident.
Mrs. Jackson began receiving workers’ compensation benefits from the date of her injury. In October 2008, her treating pain management physician, Dr. Joseph Turnip-seed, stated that he had exhausted conservative treatment and could offer her nothing more for her CRPS than continued prescription medicine. In December 2008, Dr. Turnipseed stated that Mrs. Jackson would suffer from chronic neuropathic pain indefinitely and gave her a permanent partial disability. Dr. Turnipseed authorized Mrs. Jackson to return to work at sedentary duty.
In early 2009, Mrs. Jackson underwent a Functional Capacity Exam (“FCE”), which concluded that she could not return to work in her former capacity as an LPN, but that she could return to work at sedentary duty with limited use of her right arm and hand. In July of 2009, Mrs. Jackson sought psychological treatment with Dr. Robert Davis due to her nightmares and anxiety. Dr. Davis diagnosed Mrs. Jackson with Posh-Traumatic Stress Disorder (“PTSD”) as a result of the workplace accident. Mrs. Jackson was making progress in her treatment with Dr. Davis, but voluntarily discontinued her treatment with him in January of 2010 so that she could devote her time to planning her wedding.
OLOL sought a second medical opinion on Mrs. Jackson’s PTSD diagnosis from Dr. Charles Frey. The purpose of the second medical opinion was to determine the *226 impact of Mrs. Jackson’s psychological symptoms on her ability to return to work. Mrs. Jackson appeared for an interview and testing in Dr. Frey’s office on March 2 and 9, 2010. At the end of the testing, Mrs. Jackson informed the examiner that she had not given her best effort on the test due to pain, but she did not alert him to this |4or ask to take a break because she did not want to have to return to the office. This allegedly inconsistent effort created a problem with Dr. Frey’s test results. Absent Mrs. Jackson’s statement that she did not give her best effort, Dr. Frey reported that her test results would indicate malingering. However, because of her statement regarding her effort level, Dr. Frey was unable to definitively diagnose malingering. Nevertheless, Dr. Frey pointed out that this did not rule out a finding of intentional exaggeration of symptoms and disability. Dr. Frey diagnosed Mrs. Jackson with an anxiety disorder and a pain disorder, but he did not diagnose her with PTSD because he could not rule out intentional exaggeration of symptoms or malingering, which is necessary for a PTSD diagnosis. Furthermore, he did not find her anxiety symptoms to be disabling, and found that “inconsistent motivation” was among the chief contributors to her slow progress in rehabilitation.
In May 2010, Mrs. Jackson married and moved into her husband’s home in McComb, Mississippi. By October 2010, she had voluntarily discontinued all of her pain medication in order to get pregnant. She saw a chiropractor, Dr. Webb, during her pregnancy, but stayed off of all pain medication throughout her pregnancy. Dr. Webb believed that Mrs. Jackson could return to work only part-time.
OLOL suggested to Mrs. Jackson that she find new doctors in McComb after she moved, but she chose to continue seeing her doctors in Baton Rouge because she had an established relationship with them. OLOL refused to reimburse Mrs. Jackson’s full mileage from McComb to Baton Rouge for doctor visits, and instead continued reimbursing her mileage from her former home in Clinton, Louisiana to Baton Rouge.
OLOL filed a Disputed Claim for Compensation on March 23, 2011, along with a petition seeking to suspend benefits under La. R.S. 23:1124, ^because it alleged Mrs. Jackson obstructed the psychological evaluation by Dr. Frey by not putting forth her best effort. OLOL argued that Mrs. Jackson remained off of work, purportedly due to psychological problems, but that she unilaterally terminated her psychological treatment and deprived OLOL of its statutory right to a second medical opinion in that field by refusing to make an effort to comply with testing. Mrs. Jackson filed a reconventional demand, seeking penalties and attorney fees for OLOL’s failure to reimburse her for her mileage from McComb and for her out-of-pocket medical costs, as well as for its failure to authorize psychological treatment. After a hearing, the Workers’ Compensation Judge (WCJ) denied OLOL’s request to suspend benefits and to compel supplemental testing by Dr. Frey, and ordered an Independent Medical Examination (“IME”) of Mrs. Jackson’s psychiatric/psychological issues by Dr. Ashwin Sura to determine her diagnosis, treatment plan, and ability to return to work. The IME was conducted and Dr. Sura diagnosed Mrs. Jackson with PTSD and a depressive disorder related to the accident.
Mrs. Jackson began receiving supplemental earnings benefits (“SEB”) at the temporary total disability (“TTD”) rate on April 10, 2011. She met with Tara Inzin-na, a licensed vocational counselor, on April 25, 2011 at the request of OLOL in an attempt to find a job that she could *227 perform. On May 3, 2011, Ms. Inzinna learned of a potential job with OLOL for Mrs. Jackson as a medical transcriptionist. The transcriptionist job was a work-at-home position, so Mrs. Jackson could work on her own schedule and take breaks as needed. The job would require Mrs. Jackson to travel to Baton Rouge for two weeks of training prior to starting, and thereafter three times a month. Ms. In-zinna testified that the transcriptionist job was offered with accommodations which would require no use of Mrs. Jackson’s right upper ^extremity. Very minimal typing would be required to correct errors made by the voice recognition software, and could all be done with her left hand. Ms. Inzinna testified that she felt it would be possible for Mrs. Jackson to do the transcriptionist job with the offered accommodations. Dr. Turnipseed did not approve the transcriptionist job until Mrs. Jackson delivered her baby and could resume her pain medicine; until that point, he did not believe she could work in any capacity. Mrs. Jackson expressed interest in the transcriptionist position after delivering her baby and resuming her pain medication. Mrs. Jackson was offered the transcriptionist job on June 20, 2011, to begin work on July 5, 2011 with training in Baton Rouge. Mrs. Jackson requested that OLOL hold the job for her until after she had her baby,[2] but they would not do so, so she turned it down. Mrs. Jackson’s SEB was reduced based upon her declining the transcriptionist job on July 5, 2011.
OLOL filed a supplemental petition on February 3, 2012, in which it alleged that Mrs. Jackson had made false statements or representations for the purpose of obtaining workers’ compensation benefits, entitling OLOL to relief under La. R.S. 23:1208.
After a trial, the WCJ found that Mrs. Jackson did not violate La. R.S. 23:1208. The WCJ found that Mrs. Jackson developed CRPS of the upper right extremity as a result of the workplace accident, as well as PTSD, but that the injury to her right lower extremity was unrelated to the work accident. The WCJ awarded continuing indemnity benefits for the upper right extremity, but did not award any further benefits for the PTSD, finding that her right to benefits for that condition ceased when she voluntarily terminated treatment with Dr. Davis in January of 2010. The WCJ found [7that Mrs. Jackson was entitled to receive TTD benefits from the date of the accident through February 11, 2009 at the rate of $379.92 per week, and SEB from February 12, 2009 on at the full TTD rate, less benefits received and any earned income, plus interest. The WCJ did not award penalties or attorney fees for OLOL’s reduction of Mrs. Jackson’s SEB’s, nor for OLOL’s prior termination of Mrs. Jackson’s indemnity benefits. The WCJ also found that OLOL reimbursed Mrs. Jackson’s mileage at the proper rate and that OLOL was not untimely in authorizing a psychological consultation with Dr. Davis in 2012.
OLOL appealed, arguing that the WCJ erred in finding that Mrs. Jackson did not violate La. R.S. 23:1208 and that the tender of the medical transcriptionist job was insufficient to justify a reduction in benefits. Mrs. Jackson answered the appeal, asserting that the WCJ erred in failing to award penalties and attorney fees, in failing to award reimbursement of her actual mileage incurred, and in failing to award costs. Mrs. Jackson also requests attorney fees for additional work done on this appeal.
*228 DISCUSSION
OLOL first argues that the WCJ erred in finding that it failed to prove fraud under La. R.S. 23:1208. In support of this argument, OLOL points to evidence presented at trial which it allege proved that Mrs. Jackson exaggerated her symptoms once she started recovering in order to continue receiving benefits. OLOL asserts that Mrs. Jackson’s testimony and her doctors’ testimony regarding her severe pain are at odds with the surveillance footage of Mrs. Jackson going about her daily life without her hand brace and using her right hand. OLOL asserts that the WCJ’s credibility determinations were clearly wrong on this issue.
Louisiana Revised Statutes 23:1208(A) provides in part that:
Lit shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
An employee violating La. R.S. 23:1208 shall forfeit any right to workers’ compensation benefits. La. R.S. 23:1208(E). The three requirements for forfeiture of the right to benefits under Section 1208 are: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Fontenot v. State, Department of Health and Hospitals, 12-1265, p. 4 (La.App. 1 Cir. 4/2/13), 116 So.3d 695, 697-98. Forfeiture of workers’ compensation is a harsh remedy, and statutory forfeiture must be strictly construed. An employer has the burden of proving each element within the statute, and the lack of any one of the elements is fatal to an employer’s avoidance of liability. Id. at p. 4,116 So.3d at 698.
The issue of whether an allegedly false statement or misrepresentation by the employee requires forfeiture of workers’ compensation benefits pursuant to La. R.S. 23:1208 is one of fact, which may not be reversed on appeal absent manifest error. Dominic v. BREC, 04-0485, pp. 4-5 (La.App. 1 Cir. 3/24/05), 907 So.2d 73, 76. Under that standard of review, in order to reverse the WCJ’s factual determination that Mrs. Jackson did not commit fraud, this court must find that a reasonable factual basis does not exist for the finding and that the finding is clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). On appeal, the issue to be resolved by this court is not whether the WCJ was right or wrong, but whether the WCJ’s conclusion was a reasonable one. Id.
|gIn finding that OLOL failed to prove that Mrs. Jackson made false statements for the purpose of obtaining benefits in violation of La. R.S. 23:1208, the WCJ made a credibility determination, choosing to believe the testimony of Mrs. Jackson, her husband Jamie Jackson, and her father Stewart Chaney that Mrs. Jackson did not willfully misrepresent anything to do with her case. The WCJ found that although Mrs. Jackson “may have exaggerated her situation” in discussing things as they happened, she was very young at the time of the accident and even at the time of trial, and the video surveillance actually supported, rather than contradicted, the testimony by Mrs. Jackson, Jamie Jackson, and Stewart Chaney. Upon reviewing the evidence, we find no manifest error in the WCJ’s factual determination that Mrs. Jackson did not commit fraud in violation of La. R.S. 23:1208. Mrs. Jackson and her husband both testified that she has good days and bad days depending on the weather and her activity level, that *229 she does not always wear her brace, that she attempts to use her right hand as a “helper” hand when she can and then switches to her left hand when her right hand gets tired, and that she is attempting to get on with her life in spite of the pain. The surveillance video showing her going about her daily life without her brace and using her right hand from time to time does not conflict with this testimony. Therefore, we may not disturb the WCJ’s fact finding.
OLOL next argues that the WCJ erred in finding that OLOL should not have reduced Mrs. Jackson’s SEB based on her rejection of the transcriptionist job.
The purpose of SEB is to compensate the injured employee for the wage-earning capacity she has lost as a result of the accident. Carral v. Winn-Dixie Louisiana, Inc., 05-1482, p. 3 (La.App. 1 Cir. 6/9/06), 938 So.2d 799, 801. The claimant bears the initial burden of proof in SEB [inclaims. Zirlott v. The Chitimacha Tribe of Louisiana, 04-1010, p. 4 (La.App. 1 Cir. 5/6/05), 915 So.2d 860, 862. In order to recover SEB, an employee must first prove by a preponderance of the evidence that she is unable to earn wages equal to 90% or more of wages she earned at the time of the injury. La. R.S. 23:1221(3)(a); Zirlott at pp. 4-5, 915 So.2d at 862. Once the employee’s burden is met, the burden shifts to the employer, who, in order to defeat the employee’s SEB claim or to establish the employee’s earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee in his or the employer’s community or reasonable geographic region. Connor v. Family Dollar Store, 09-1537, pp. 7-8 (La.App. 1 Cir. 3/26/10), 36 So.3d 339, 346, writ denied, 10-0959 (La.6/25/10), 38 So.3d 344.
In ruling that OLOL failed to defeat the claim for SEB, the WCJ found that OLOL did not provide proof of a suitable job offered to Mrs. Jackson once Mrs. Jackson carried her burden of proving that she was unable to earn 90% or more of her pre-injury wage. The WCJ noted that because Mrs. Jackson is unable to adequately use her dominant arm, she cannot live on her own. Soon after the accident, Mrs. Jackson had to give up her apartment and move back in with her parents. Mr. Chaney testified that his wife had to help Mrs. Jackson with basic care, including bathing, and that Mrs. Jackson was unable to contribute much. She later moved to her husband’s home in McComb, which he remodeled to accommodate her limitations related to her accident. Because of her limitations and need for support services, the WCJ found that suitable jobs would need to be located in McComb, Mississippi in order for Mrs. Jackson to be able to perform them. As a result of the regular travel to Baton Rouge required by the transcriptionist job, the WCJ found the job to be Baton Rouge-based, and therefore unsuitable for Mrs. Jackson. As such, a reduction of SEB could not be based on the rejection of that job.
The WCJ’s finding that OLOL did not offer Mrs. Jackson a suitable job is a factual finding, which will not be reversed absent manifest error or unless it is clearly wrong. Based upon the evidence before us regarding Mrs. Jackson’s limitations and the amount of travel to Baton Rouge required for the job, we cannot say the WCJ was manifestly erroneous in finding that the transcriptionist job was not a suitable one on which to base a reduction in benefits. This assignment of error lacks merit.
In her answer to the appeal, Mrs. Jackson first argued that the WCJ erred in failing to make an award of penalties and *230 attorney fees based upon OLOL’s “malicious” job offer.
Louisiana Revised Statutes 23:1201(1) provides that an employer will be subject to a penalty and payment of reasonable attorney fees for the prosecution and collection of a claim where the employer discontinues payment of claims due and such discontinuance is found to be arbitrary, capricious, or without probable cause. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or action of seemingly unfounded motivation. Arretteig v. Our Lady of the Lake Hosp., Inc., 13-1603, p. 14 (La.App. 1 Cir. 3/21/14), 142 So.3d 1048, 1056. Whether a refusal to pay is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Silverman v. Weatherford Int’l, Inc., 46,402, p. 12 (La.App. 2 Cir. 10/19/11), 83 So.3d 11, 19 writ denied. 12-0076 (La.3/23/12), 85 So.3d 89. The crucial inquiry is whether the employer had articulable and objective reasons for denying or | ^discontinuing the benefits at the time it took that action. Id. The determination of whether an employer has been arbitrary or capricious or has failed to reasonably controvert a claim is a question of fact subject to the manifest error standard of review. Arretteig at p. 14, 142 So.3d at 1056.
In finding that OLOL was not arbitrary or capricious in reducing Mrs. Jackson’s benefits, the WCJ noted that even though she ultimately concluded that OLOL did not carry its burden of proving fraud, at the time it reduced Mrs. Jackson’s SEB, OLOL had before it information to support its allegations of fraud. The WCJ noted that another factfinder could reasonably have concluded that this information proved OLOL’s allegations of fraud, and the WCJ “[did] not blame the [OLOL] for questioning it.” Therefore, the WCJ concluded that OLOL did not act arbitrarily or capriciously. Considering the evidence which was available to OLOL at the time of its decision, including the surveillance videos and Dr. Frey’s opinion that Mrs. Jackson was intentionally exaggerating her symptoms and possibly malingering, we agree with the WCJ that OLOL legitimately pursued a defense to payment under La. R.S. 23:1208 and had factual information to support this defense at the time of the reduction of benefits. The WCJ was neither manifestly erroneous nor clearly wrong in finding that OLOL was not arbitrary or capricious and denying Mrs. Jackson’s claim for penalties and attorney fees. This assignment of error by Mrs. Jackson has no merit.
Mrs. Jackson next argues that the WCJ erred in failing to award reimbursement of her mileage for her travel to see her treating physicians in Baton Rouge following her move to McComb.
Louisiana Revised Statutes 23:1203(D) provides that the employer “shall be hable for the actual expenses reasonably and necessarily incurred by the employee for mileage reasonably and necessarily traveled by the 11semployee in order to obtain the medical services ... which the employer is required to furnish under this Section.” (Emphasis added.)
The WCJ noted that Mrs. Jackson was given the option to use doctors in McComb following her move, but that she chose to continue treatment with her doctors in Baton Rouge. Mrs. Jackson did not testify that there were no suitable doctors available in the McComb area; rather, she testified that she had developed a relationship with her pain management doctor in Baton Rouge and “didn’t want to change.” The WCJ found that *231 OLOL’s payment of mileage from her former home in Clinton to her doctors in Baton Rouge was not unreasonable. Based on the evidence before us, we cannot say that this fact finding by the WCJ is manifestly erroneous or clearly wrong. This assignment of error is without merit.
Mrs. Jackson next argues that the WCJ abused its discretion in refusing to award her court costs for the wrongful reduction of her benefits under La. R.S. 23:1317(B), which states in part that costs “may be awarded by the workers’ compensation judge, in his discretion, and when so awarded the same may be allowed, taxed, and collected as in other civil proceedings.” Mrs. Jackson argues that she should be awarded costs because the reduction of her SEB caused her to have to hire an independent vocational counselor to address the wrongful reduction of her benefits. In denying costs, the WCJ noted that the information provided by Mrs. Jackson’s independent vocational counselor was of no use to the court. Considering the WCJ’s finding that OLOL had a reasonable factual basis for its decision to reduce Mrs. Jackson’s benefits, although it was ultimately unsuccessful, we cannot say that the WCJ abused her discretion in denying costs to Mrs. Jackson.
Finally, Mrs. Jackson filed a supplemental answer to the appeal requesting additional attorney fees for work performed on the appeal of this |14matter. This court has held that such an increase is appropriate when the employer appeals, obtains no relief, and the appeal necessitates additional work for the employee’s counsel, provided that the employee properly requests the increase. Lewis v. Temple Inland, 11-0729, p. 22 (La.App. 1 Cir. 11/9/11); 80 So.3d 52, 66. Given that Mrs. Jackson raised several unsuccessful assignments of error of her own, which necessitated additional work for the employer’s counsel, we find an award of additional attorney fees inappropriate.
CONCLUSION
For the reasons set forth above, the judgment appealed from is affirmed, and Mrs. Jackson’s request for attorney fees for work done on appeal is denied. Costs of this appeal are to be borne equally by OLOL and Mrs. Jackson.
AFFIRMED; REQUEST FOR ATTORNEY FEES DENIED.

. At the time of the accident at issue herein, the plaintiff's name was Keri Chaney. In 2010, she married and became Keri Chaney Jackson. For simplicity, we will refer to her as Mrs. Jackson throughout the opinion.

. Her baby was bom July 12, 2011.