WHIPPLE, C.J.
lain this workers’ compensation matter, both parties challenge various portions of the judgment rendered below, which awarded the injured employee supplemental earnings benefits (SEBs) in varying amounts for various periods of time, medical expenses, penalties, and attorney’s fees. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On May 27, 2009, Melissa Arretteig, a registered nurse (RN) who was employed by Our Lady of the Lake Hospital (OLOL) at the time, injured her back while transferring a patient. Initially after the accident, Arretteig continued to work full time while also seeking medical treatment for her injury. Because of continued pain, however, she was restricted from work, and received temporary total disability benefits, from July 27, 2009 to October 26, 2009. Arretteig then returned to full-duty work for a period of approximately eleven months, but she continued to have pain and discomfort, resulting in her treating physician restricting her to light duty as of September 29, 2010, pending further testing. Thus, Arretteig was placed in a light-duty position at OLOL, but this position was terminated on March 4, 2011. Ultimately, Arretteig’s treating physician placed permanent physical restrictions on Arretteig limiting her to a “low medium physical demand level” restrictions that prevent her from performing the duties of her prior position as a floor nurse.
Although OLOL eventually paid Arret-teig SEBs representing indemnity benefits for a short period time following the termination of the light-duty position in which she was working, disputes arose between the parties as to the calculation of the SEB benefit to which Arretteig was entitled and as to her continued entitlement to SEBs as of April 9, 2011, the Ineffective date on which OLOL terminated those weekly indemnity benefits.[1] Thus, on May 12, 2011, Arretteig filed a Disputed Claim for Compensation, seeking additional weekly indemnity benefits, penalties, and attorney’s fees, together with costs and interest.
Following trial of this matter, the workers’ compensation judge signed a judg *1051 ment dated May 29, 2013, which, in addition to awarding various medical benefits and related penalties, awarded Arretteig: additional SEBs in differing amounts for various periods between March 4, 2011 and April 20, 2013; ongoing SEBs from April 20, 2013, forward; a $2,000 penalty for OLOL’s failure to timely pay SEBs for the period of March 7, 2011 to April 9, 2011; $20,000.00 in attorney’s fees; and interest on all indemnity benefits from the date each installment is due until paid and on all medical benefits, penalties and attorney’s fees from the date of the award until paid.
From this judgment, OLOL appeals, contending that the workers’ compensation judge erred in:
(1) finding that Arretteig met her initial burden of proving her entitlement to SEBs when she admitted that she did not want a full-time position and declined an interview for a full-time position within her restrictions that would have paid in excess of ninety percent of her average weekly wage;
(2) finding that the Case Manager position with OLOL was not available to Ar-retteig where the evidence demonstrated that all of the factors set forth in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, regarding job availability were satisfied;
|4(3) finding that the earning capacity of the Medical Call Center position with OLOL should be based on an assumed twenty hours per week when the uncontro-verted evidence showed the actual hours that would have been available for this position; and
(4) finding that attorney’s fees of $20,000.00 were reasonable where the award was based on the time Arretteig’s attorney spent on the entire case and only a small fraction of that time was spent on issues that OLOL was found to have failed to reasonably controvert.
Arretteig has also appealed the judgment, contending that the workers’ compensation judge erred in:
(1) finding that the Medical Call Center job was sufficient to reduce her SEBs for the period of April 14, 2011 to June 1, 2011;
(2) finding that OLOL was not arbitrary and capricious in terminating her SEBs on April 9, 2011; and
(3) failing to award all attorney’s fees requested.
DISCUSSION

Entitlement to SEBs

(OLOL’s Assignment of Error No. 1)
OLOL first contends that the workers’ compensation judge erred in finding that Arretteig met her initial burden of proving her entitlement to SEBs. The purpose of SEBs is to compensate the injured employee for the wage earning capacity she has lost as a result of her accident. Poissenot v. St. Bernard Parish Sheriff's Office, 2009-2793 (La.1/9/11), 56 So.3d 170, 174. An employee is entitled to receive SEBs if she sustains a work-related injury that results in her inability to earn ninety percent or more of her average pre-injury wage. LSA-R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving by a preponderance of the evidence that the | fjnjury resulted in her inability to earn that amount under the facts and circumstances of the individual case. This analysis is necessarily a facts and circumstances one in which the court is to be mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage. Banks, 696 So.2d at 556. The workers’ compensation judge must take into account all factors which *1052 might bear on an employee’s ability to earn a wage in determining whether the injured employee has met her burden of showing an inability to earn ninety percent of her pre-injury wage, including factors such as the employee’s medical condition, efforts at obtaining employment post-injury, and actual work history after the accident. See Poissenot, 56 So.3d at 174, 178-179.
Turning to OLOL’s arguments in support of this assignment of error, we find no merit to its first contention that the workers’ compensation judge “seemed to” find that Arretteig met her burden of proof because the physician-imposed restrictions prevent her from employment as a RN and, thus, “applied the wrong legal standard.” OLOL suggests that the workers’ compensation judge appeared to focus only on Arretteig’s inability to return to her prior employment as a registered nurse, rather than focusing on whether she could earn ninety percent of her pre-injury wages in any employment. However, a reading of the entirety of the workers’ compensation judge’s reasons for judgment demonstrates that she considered all the evidence, including Arretteig’s permanent medical condition, her resulting inability to perform her pre-injury RN job as a floor nurse, and her post-injury efforts in obtaining related employment within her educational background.
The record demonstrates that at the time of the accident, Arretteig was an RN employed as a floor nurse, a job which required frequent turning of Rpatients as wells as transferring patients and assisting them in and out of bed. Her position was a night position, which entitled her to evening and night shift differentials in addition to the base pay, resulting in an average weekly wage of $1,217.82. As a result of the work injury, Arretteig has been assigned permanent physical restrictions in accordance with a functional capacity evaluation, which limit her to work at a “low medium” physical level, with only occasional lifting of 20 to 45 pounds. She is no longer able to perform her pre-injury job as a floor nurse because of her work injury. Ultimately, on April 4, 2011, Ar-retteig accepted a part-time job within her physical restrictions at Woman’s Hospital in the radiology department of the Breast Center at Woman’s Hospital, a position that does not pay any shift differentials.[2]
Contrary to OLOL’s contention that the workers’ compensation judge erred in finding that Arretteig met her initial burden of proof because her testimony demonstrated that she did not want a full-time position, we note that Arretteig did in fact work full time after her accident in the modified position at OLOL that was within her restrictions, thus, clearly demonstrating her willingness to work in a full-time capacity. Indeed, Arretteig continued to work full time in that modified-duty position until 17March 4, 2011, when OLOL made the decision to terminate that position.[3]
*1053 Moreover, the record further establishes that after the modified-duty position was terminated, Arretteig was diligent in her efforts to find other employment within her restrictions, Arretteig applied for the jobs the vocational counselor identified for her, in addition to applying for jobs she herself found. Notably, upon graduating from nursing school in 2008, Arretteig began working for OLOL in the inpatient unit, where she provided patients to whom she was assigned with total care, ie., a floor nurse position, and she had no other experience in any other types of RN positions. With regard to her ability to make her pre-injury wage, Arretteig testified that most RN jobs that pay as much as she was making at the time of the accident require lifting beyond what her physical restrictions allowed. This testimony is supported by OLOL’s workers’ compensation coordinator, who acknowledged at trial that she had told the vocational counsel- or assigned to the case that it is very difficult to accommodate a nurse with permanent lifting restrictions.
For this reason, even prior to OLOL terminating the modified-duty position in which she was working full time, Arretteig had returned to school to obtain her advanced practice degree that would allow her to seek jobs as a nurse practitioner. She believed this would allow her to earn her relatively high pre-injury wage in a job within her physical restrictions. While 18Arretteig expressed concerns about a full-time job with inflexible hours as potentially interfering with her continued schooling, she testified at trial she would have considered any job that was offered to her. She further testified that she believed that she could have continued to work full time and pursue her advanced degree in another position with flexible hours, like the hours of the modified-duty position in which she had been working.
Moreover, regarding OLOL’s additional contention that Arretteig demonstrated her unwillingness to consider full-time employment by declining an interview for a Case Manager job after she had accepted her current position at Woman’s Hospital, we note, as addressed in our discussion of OLOL’s second assignment of error below, that the workers’ compensation judge determined that that particular position was “unavailable” to Arretteig, a finding that we cannot say is manifestly erroneous.
In reviewing the factual findings made below, we note that the workers’ compensation judge specifically found Arretteig to be “highly credible” and found her efforts at finding employment within her restrictions following OLOL’s termination of the modified-duty position to be in “good faith.” Thus, considering the foregoing and the record as a whole, finding no manifest error in the workers’ compensation judge’s factual findings, and mindful of the credibility determinations that were made herein, we find no merit to OLOL’s contention that the workers’ compensation judge erred in finding that Arretteig met her initial burden of proving that her injury resulted in her inability to earn ninety percent of her pre-injury wages. See generally Chauvin v. Terminix Pest Control, Inc., 2011-1006 (La.App. 1st Cir.6/28/12), 97 So.3d 476, 480-484.
1 ¡,.Availability of Case Manager Position
(OLOL’s Assignment of Error No. 2)
OLOL next argues that it identified at least one job for Arretteig within her physical restrictions that would pay more than ninety percent of her pre-injury aver *1054 age weekly wage, specifically a Case Manager position, and that the workers compensation judge erred in finding that the position was “unavailable” to Arretteig.
Once the employee has met her burden of proving an inability to earn ninety percent of average pre-injury wage, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs or establish the employee’s earning capacity, must prove, by a preponderance of the evidence: (1) that the employee is physically able to perform a certain job; and (2) that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region, LSA-R.S. 23:1221(3)(c)(i). The amount of SEBs is based upon the difference between the employee’s pre-injury average monthly wage and her proven post-injury monthly earning capacity. LSA-R.S. 23:1221(3)(a); Banks, 696 So.2d at 556.
In Banks, the Louisiana Supreme Court instructed that an employer may discharge its burden of proving job availability by establishing, at a minimum, the following, by competent evidence:
(1) the existence of a suitable job within the employee’s physical capabilities and within the employee’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with the injured employee’s experience and training can be expected to earn in that job; and
lm(3) an actual position available for that particular job at the time that the employee received notification of the job’s existence.
Banks, 696 So.2d at 557. Therein, the Louisiana Supreme Court further explained that “suitable job,” means a job that the injured employee is not only physically capable of performing, but one that also falls within the limits of the employee’s age, experience, and education, unless the employer or potential employer is willing to provide any additional necessary training or education. Banks, 696 So.2d at 557.
In the instant case, the vocational counselor assigned to Arretteig’s case by OLOL advised Arretteig of a “Case Manager, Rehab Unit” position at OLOL. The listed job specifications provided that the minimum experience required was “[tjhree years in general or specialty nursing practice,” with preferred experience in “[pjrior managed care and utilization management.” The email correspondence sent to Arretteig did not specifically list any physical requirements of the position.
As to whether this position was a “suitable job” for Arretteig, the record demonstrates that the OLOL workers’ compensation coordinator acknowledged that at the time Arretteig was informed of the Case Manager position, she undisputedly did not have the requisite three years of experience as a nurse. Additionally, the coordinator further acknowledged that Arretteig did not have the preferred experience in managed care or utilization management. Moreover, regarding the workers’ compensation coordinator’s testimony that OLOL would have been willing to “hold” the job for Arretteig, the workers’ compensation judge clearly rejected and did not believe her testimony, calling this testimony “disingenuous.” The workers’ compensation judge noted that information as to the existence or availability of such a policy had not been supplied to Arretteig and that the ^vocational counselor working on the case was also unaware of such a policy at OLOL.
Furthermore, regarding the physical requirements of the job, we note that, by letter dated March 9, 2011, the OLOL *1055 workers’ compensation coordinator informed Arretteig that she could not return to work at OLOL in a capacity greater than her restrictions of no lifting, pushing or pulling more than 25 pounds, until she had completed a functional capacity evaluation. OLOL then scheduled the functional capacity evaluation for April 14, 2011, eight days after she was notified of the Case Manager position.
The April 6, 2011 email notifying Arret-teig of the Case Manager position listed the job details as follows:
Works collaboratively with all members of the health care team and the pa-tieni/family to ensure coordination of patient care and resource utilization. The Case Manager participates in the assessment of patients including physical and psychological factors in order to plan for individualized continuum of care needs and ensures the implementation of the discharge plan.
While the OLOL workers’ compensation coordinator testified at trial that the job involved “mainly desk work” and Arret-teig was informed that it did not involve lifting patients, the lack of a description of the physical requirements of this job in the notification obviously left questions remaining as to whether all of the job duties were within her physical restrictions.
Indeed, the OLOL workers’ compensation coordinator clearly recognized this problem, as evidenced from a May 25, 2011 email she sent to the vocational counselor, wherein she stated:
I explained to you that we needed to do everything perfectly and to make sure we were able to reduce Miss Arretteig’s benefits in accordance with the comp act. I recall telling you that we did not have a job description on any OLOL position that included physical restrictions or pay, which is why I gave you the hiring manager’s contact information for each job. I needed a JA to be done to accurately depict the physical requirements of the position.... It is too late to do a JA on | ^either of the two case manager positions or to present them to Dr. Smith. They have both been filled.
Considering the foregoing and the record as a whole, we cannot conclude that the workers’ compensation judge was manifestly erroneous or clearly wrong in finding that the Case Manager position was not “available” to Arretteig.
This assignment of error lacks merit.

Medical Call Center Position

(OLOL’s Assignment of Error No. 3; Arretteig’s Assignment of Error No. 1)
Arretteig also applied for a part-time Medical Call Center position at OLOL, with hours listed as “PRN, 20 hours a week.” She interviewed for the position on March 8, 2011 and was offered the job. However, she declined the position. The workers’ compensation judge found that this job fit within Arretteig’s physical restrictions and, thus, that she should not have declined it. Accordingly, in calculating Arretteig’s SEB rate, the workers’ compensation judge reduced her average weekly wage by $648.80, representing the hourly wage rate of the position for twenty hours per week.
In her first assignment of error, Arretteig contends that the workers’ compensation judge erred in finding that the Medical Call Center position was available to her because, as discussed above, on March 9, 2011, the day after the interview, OLOL’s workers’ compensation coordinator sent her a letter, stating that she could not return to work at OLOL in a capacity beyond her current restrictions until she had completed a functional capacity evaluation. However, we note that Arretteig *1056 testified at trial that the Call Center position was a job that she could physically perform, thus acknowledging that the position was not beyond her physical restrictions. 11SAccordingly, we find no merit to Arretteig’s argument that the judge erred in finding that this position was “available” to her.
OLOL claims in its third assignment of error that the workers’ compensation judge manifestly erred in reducing Arret-teig’s SEBs by only $648.80, contending that it supplied data showing that the person who ultimately filled the position has worked more than twenty hours a week and that the position was ultimately considered a full-time position as of October 2012. We disagree.
The evidence of record demonstrates that the actual position identified and available at the time Arretteig applied for and interviewed for the job in early March 2011 had listed hours, as stated above, of “PRN, 20 hours a week.” The mere fact that someone in this position may have ultimately worked more than twenty hours per week or that the position was eventually classified as full-time does not demonstrate that the position was still available to Arretteig at the time when the position offered greater hours. Thus, we likewise find no merit to this OLOL’s argument that the judge erred in refusing to further reduce Arretteig’s SEBs.

Arretteig’s Entitlement to Additional Penalties

(Arretteig’s Assignment of Error No. 2)
? the workers’s compensation judge ultimately determined that the Case Manager position was “unavailable” to Ar-retteig and, thus, could not support a termination of SEBs, she further found that OLOL’s termination of SEBs on the basis of the alleged availability of that position was neither arbitrary nor capricious. In her second assignment of error, Arretteig contends that this finding was manifestly erroneous and that she is entitled to additional penalties.
|14An employer shall be subject to a penalty and payment of reasonable attorney’s fees for the prosecution and collection of a claim where it discontinues payment of claims due and such discontinuance is found to be arbitrary, capricious, or without probable cause. LSA-R.S. 28:1201(1). Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or action of seemingly unfounded motivation. The determination of whether an employer has been arbitrary or capricious or has failed to reasonably controvert a claim is a question of fact subject to the manifest error standard of review. Nitcher v. Northshore Regional Medical Center, 2011-1761 (La.App. 1st Cir.5/2/12), 92 So.3d 1001, 1010-1011, writ denied, 2012-1230 (La.9/21/12), 98 So.3d 342.
In the instant case, the workers’ compensation judge found that OLOL’s actions in terminating SEBs as of March 9, 2011, were not arbitrary or capricious given that “vocational efforts were being made and there were communication'problems involved” with Arretteig, the workers’ compensation coordinator, and the vocational counselor. Considering the record on appeal, we cannot conclude that the workers’ compensation judge was manifestly erroneous in this factual conclusion,

Attorney’s Fees

(OLOL’s Assignment of Error No.
4; Arretteig’s Assignment of Error No. 3)
The workers’ compensation judge further found that some of OLOL’s actions rendered it liable to Arretteig for penalties and attorney’s fees. Specifically, the *1057 workers’ compensation judge assessed the following penalties against OLOL: $2,000.00 for its failure to timely pay SEBs owed to Arretteig, where OLOL had candidly admitted such benefits were due by letter dated May 2, 2011, but payment was not received by Arretteig until | ^August 2011; $2,000.00 for the untimely payment of two prescription expenses that had still not been paid as of the time of trial; $2,000.00 for the untimely payment of an out-of-pocket medical expense reimbursement request that had still not been paid as of the time of trial; and $1,250.00 for OLOL’s unwarranted refusal to timely authorize Dr. Nyboer as Arretteig’s choice of physician.
In addition to the imposition of those penalties, the workers’ compensation judge ordered OLOL to pay Arretteig attorney’s fees in the amount of $20,000.00. On appeal, OLOL contends that the amount of the award was excessive, while Arretteig contends that the award was too low.
Pursuant to LSA-R.S. 23:1201(F), the failure to provide payment of indemnity or medical benefits in accordance with LSA-R.S. 23:1201 or the failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required shall result in the assessment of a penalty “together with reasonable attorney fees for each disputed claim.” Although the primary consideration in the imposition of attorney’s fees is not to compensate the employee, but rather to discourage certain offensive behaviors on the part of the employer or insurer, the amount so awarded is intended to fully compensate the employee’s attorney, thereby benefitting the employee, for the attorney’s services rendered in connection with the litigation. Langley v. Petro Star Corp. of La, 2001-0198 (La.6/29/01), 792 So.2d 721, 726-727. Factors to be considered when fixing the amount of attorney’s fees to be awarded include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered by the employee, and the amount of time the attorney devoted to the ease. Davis v. Farm Fresh Food Supplier, 2003-1381 (La.App. 1st Cir.5/14/04), 879 So.2d 215, 221. On review, the amount of attorney’s fees 11fiawarded by the workers’ compensation judge will not be disturbed absent an abuse of discretion. See Langley, 792 So.2d at 727.
In the instant case, Arretteig’s counsel, who has over twenty years of experience in the area of workers’ compensation law, submitted an affidavit demonstrating that, prior to trial, he had expended over 117 hours on this case. In awarding $20,000.00 in attorney’s fees, the workers’ compensation judge specifically concluded that this amount was reasonable, even without consideration of the claims for SEBs also awarded, “considering the need for trial to obtain the obviously due penalties” and that counsel in this matter “are highly experienced in this field and spent a great deal [of] time in preparation and two days of trial.”
Thus, while the amounts remaining unpaid as of the time of trial for which Arretteig was awarded penalties were relatively small in relation to the entirety of all the awards, the workers’ compensation judge clearly found that the amount awarded was reasonable for the work required on those claims alone in light of Arretteig’s attorney’s expertise and the particular circumstances, including the fact that Arretteig was forced to litigate these claims to obtain payment even of these relatively small amounts due. After careful review, we find no abuse of the workers’ compensation judge’s discretion in the decision to make an award of $20,000.00 for Arretteig’s attorney’s fees. See Billiot v. Wal-Mart Stores, Inc., 2003-2451 (La. *1058 App. 1st Cir.10/29/04), 897 So.2d 64, 67-68. However, we likewise find no merit to Arretteig’s claim that the amount was abusively low.
Thus, OLOL’s and Arretteig’s assignments of error challenging the amount of the award have no merit.
^CONCLUSION
For the above and foregoing reasons, the May 29, 2013 judgment, awarding Ar-retteig benefits, penalties, and attorney’s fees, is hereby affirmed. Costs of this appeal are assessed against defendant, Our Lady of the Lake Hospital, Inc.
AFFIRMED.

. Arretteig did not actually receive payment for the SEB benefits to which OLOL determined she was entitled until August 12, 2011.

. Although the position at Woman's Hospital is part-time, Arretteig stipulated at trial to an earning capacity of a 40-hour work week at the wage rate she is being paid in the part-time position.

. The OLOL workers' compensation coordinator who was assigned to Arretteig's case testified that OLOL will accommodate restrictions, but will then reassess the need for such light duty every 90 days. If the employee appears as though he or she will get to the point where the employee can return to full duty, OLOL will continue to accommodate the employee. However, in Arretteig's case, her restrictions are permanent, and OLOL terminated the modified position.
After the modified-duty position was terminated, Arretteig inquired about her entitlement to workers’ compensation benefits and was initially told on two occasions by the OLOL workers’ compensation coordinator that she was not entitled to any benefits. We *1053 note that an employer cannot avoid paying compensation benefits to an injured employee by creating a job that accommodates the injured employee’s work restrictions and then firing the injured employee, Poissenot, 56 So.3d at 177.