WHIPPLE, C.J.
lain this workers’ compensation appeal, the employer and its workers’ compensation insurer challenge the judgment of the Office of Workers’ Compensation, which awarded the injured employee supplemental earnings benefits ("SEBs”), attorney’s fees, and penalties. For the following reasons, we amend the judgment in part and affirm, as amended.
FACTS AND PROCEDURAL HISTORY
On May 17, 2012, Jo Ann Albert, who was employed by Strategic Restaurants Acquisition Company, LLC (“Strategic”) as a crew member at the Burger King in Covington, La., slipped and fell on grease in the restaurant. As a result of the fall, she fractured her right foot, which required surgery to repair. Following the surgery, she had continued complaints of pain, resulting in a second surgical proce *510 dure to remove the hardware placed in her foot. On December 12, 2012, the orthopedic surgeon reported that Albert was unable to return to her full-duty work requirements and that she was restricted to lifting no more than twenty, pounds and standing for no more than one hour with frequent breaks. Albert was subsequently referred to a pain management physician for her continued complaints of pain, and she was ultimately diagnosed with reflex sympathetic dystrophy. On April 24, 2013, the pain management physician restricted Albert to sedentary work, commenting that her ability to stand and ambulate was very limited.
On August 15, 2013, Strategic terminated all weekly workers’ compensation benefits being paid to Albert. Albert then filed a disputed claim for compensation, alleging that Strategic had improperly terminated her indemnity payments and seeking penalties, attorney’s fees, costs and interest.
Strategic denied Albert’s claim and requested that a preliminary determination hearing be scheduled with the workers’ compensation judge, |3pursuant to LSA-R.S. 23:1201.1. Albert filed a motion to strike Strategic’s request for a preliminary determination hearing. Following a hearing, the workers’ compensation judge granted Albert’s motion to strike, finding that Strategic had failed to show evidence of compliance with all of the procedures set forth in LSA-R.S. 23:1201.1(A), which are prerequisites for an employer’s request for a preliminary determination hearing.
Albert’s claim then proceeded to trial before the workers’ compensation judge on February 5, 2014. At the trial, the parties stipulated that Albert was injured in an accident arising out of the course and scope of her employment with Strategic, and that she had sustained an injury to her right ankle/foot. The parties further stipulated that at the time of her injury, Albert’s average weekly wage was $217.65. At the trial, Strategic did not contest the extent of Albert’s physical limitations or whether her physical limitations were caused by her work-related injury. Instead, Strategic contended that it properly terminated Albert’s indemnity benefits because there was evidence that Albert was able to earn more than ninety percent of her pre-accident wages. The only witnesses called to testify at trial were Albert and Rusty Pleune, a licensed and certified rehabilitation counselor who had worked with Albert. The documentary evidence introduced at the trial consisted of: (1) Albert’s medical records; (2) correspondence from Pleune regarding potential job openings for Albert; and (3) detailed notes that Albert kept regarding various jobs that she had applied for after the accident, all to no avail.
Following the trial, the workers’ compensation judge found that Strategic and its workers’ compensation insurer, New Hampshire Insurance Company, had terminated Albert’s indemnity benefits based on a vocational rehabilitation process that was “grossly insufficient.” Accordingly, a judgment was signed on April 23, 2014, ordering Strategic to pay Albert SEBs in the amount of $158.00 per week for the period of August 16, 2013, through the date of trial, plus legal interest. The | ¿judgment further ordered that Strategic pay Albert SEBs based on the annual weekly wage of $217.65 per week from the date of trial forward, with credit under the applicable credit formula for wages earned or wages Albert is able to earn each month, if any. The judgment also ordered that Strategic pay $6,500.00 in attorney’s fees, plus legal interest, and a $2,000.00 penalty for its arbitrary and capricious termination of benefits “without probable cause.”
*511 From this judgment, Strategic and its insurer appeal, contending that the workers’ compensation judge erred in:
(1)striking the request for a preliminary determination hearing;
(2) awarding supplemental earnings benefits from August 16, 2013 through February 5, 2014;
©awarding supplemental earning benefits in the amount of $158.00 per week;
(4) awarding supplemental earnings benefits for any period of time after the trial; and
©awarding penalties and attorney’s fees.
DISCUSSION

Request for a Preliminary Determination Hearing

(Assignment of Error No. 1)
Strategic first contends that the workers’ compensation judge erred in striking the request for a preliminary determination hearing upon finding that Strategic did not comply with the mandatory procedures set forth in LSA-R.S. 23:1201.1. Strategic avers that had a preliminary determination hearing taken place, it would have had the opportunity to avoid Albert’s claim for penalties and attorney’s fees.
Louisiana Revised Statute 23:1201.1, as enacted by Acts 2013, No. 337, provides that employers may request a preliminary determination hearing in their answer to a disputed claim for compensation. LSA-R.S. 23:1201.1(13). Pursuant to the statute, when a request for a preliminary determination hearing is made, the workers’ compensation judge shall initiate a telephone status conference with the parties to schedule discovery deadlines and facilitate the exchange of documents. | sLSA-R.S. 23:1201.1(J)(3). The preliminary determination hearing shall then be held within ninety days of this status conference, with one thirty-day extension permitted. LSA-R.S. 23:1201.1(J)(2). An employer or pay- or who has not complied with the requirements set forth in Subsection A through E of this Section or who has not initially accepted the claim as compensa-ble, subject to further investigation and subsequent controversion, shall not be entitled to a preliminary determination. An employer or payor who is not entitled to a preliminary determination or who is so entitled but fails to request a preliminary determination may be subject to penalties and attorney fees pursuant to LSA-R.S. 23:1201 at a trial on the merits or hearing held pursuant to Paragraph (K)(8) of this Section. LSA-R.S. 23:1201.1(I)(1).
At issue herein is whether Strategic was entitled to a preliminary determination hearing despite not showing evidence of compliance with all of the requirements set forth in subsection A of LSA-R.S. 23:1201.1, specifically LSA-R.S. 23:1201.1(A)(2)and(A)(3). Subsection A of LSA-R.S. 23:1201.1 states, in pertinent part, as follows:
A. Upon the first payment of compensation or upon any modification, suspension, termination, or controversion of compensation or medical benefits for any reason, including but not limited to issues of medical causation, compensability of the claim, or issues arising out of R.S. 23:1121, 1124, 1208, and 1226, the employer or payor who has been notified of the claim, shall do all of the following:
(1) Prepare a “Notice of Modification, Suspension, Termination, or Controversion of Compensation and/or Medical Benefits”.
(2) Send the notice of the initial indemnity payment to the injured employee on the same day as the first payment of *512 compensation is made by the payor after the payor has received notice of the claim from the employer.
(3) Send a copy of the notice of the initial payment of indemnity to the office within ten days from the date the original notice was sent to the injured employee or by facsimile to the injured employee’s representative.
|fi(4) Send the “Notice of Payment, Modification, Suspension, Termination, or Controversion of Compensation and/or Medical Benefits” to the injured employee by certified mail, to the address at which the employee is receiving payments of compensation, on or before the effective date of a modification, suspension, termination, or controversion.
(5) Send a copy of the “Notice of Payment, Modification, Suspension, Termination, or Controversion of Compensation and/or Medical Benefits” to the office on the same business day as sent to the employee or to his representative.
The interpretation of this recently enacted statute appears to be a de novo issue for this court. A court’s interpretation of any statute starts with the language of the statute itself. Cat’s Meow, Inc. v. City of New Orleans, through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law should be applied as written. LSA-C.C. art. 9. However, when the language of the law is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10.
Section I of LSA-R.S. 23:1201.1 succinctly states that an employer who has not complied with subsection A shall not be entitled to a preliminary determination hearing. Moreover, the requirements of subsection A are clear and unambiguous. Specifically, a “notice of initial indemnity payment” must be sent to the employee on the same day as the first compensation, and this notice must also be sent to the office within ten days from the date the notice was sent to the employee. LSA-R.S. 23:1201.1(A)(2)and(A)(3). A “Notice of Payment, Modification, Suspension, Termination, or Controversion of Compensation and/or Medical Benefits” must then be sent to the employee on or before the effective date of any modification, suspension, termination, or controversion of benefits, and a copy of this notice shall be sent to the office on the same date. LSA-R.S. 23:1201.l(A)(4)and (A)(5).
Here, Strategic did not offer any evidence that it sent the required “notice of initial indemnity payment” to the employee or to the office when the first |7compensation payment was made to Albert.[1] Nevertheless, Strategic contends that whether a notice of payment was sent with the first payment is irrelevant. This argument is based on Strategic’s interpretation of LSA-R.S. 23:1201.1(A) as stating that all steps, i.e. “steps 1 through 5,” must be done upon any modification of *513 payments. Accordingly, Strategic contends that complying with LSA-R.S. 23:1201.1(A)(2)and(A)(3) when a payment is modified is impossible and would result in absurd consequences.
We disagree. Contrary to Strategic’s contention, we find that a plain reading of LSA-R.S. 23:1201.1 requires that the notice of the initial indemnity payment, as referenced in LSA-R.S. 23:1201.1(A)(2)and(A)(3), must be sent at the time of the first payment, whereas, the notice of payment modification, as referenced in LSA-R.S. 23:1201.1(A)(4)and(A)(5) must be sent at the time of any payment modification.
Accordingly, we next address whether Strategic was required to show evidence of compliance with LSA-R.S. 23:1201.1(A)(2) and (A)(3) when the first payment was made, since this statute was enacted after the date of Albert’s injury and after Strategic made the first payment to Albert. Section 2 of Acts 2013, No. 337, which enacted LSA-R.S. 23:1201.1, states that the statute is remedial, curative, and procedural, and therefore, is to be applied retroactively as well as prospectively. However, even where the legislature has expressed its intent to give a law retroactive effect, the law may not be applied retroactively if to do so would |simpair contractual obligations or disturb vested rights. Davis v. St. Francisville Country Manor, LLC, 2005-0072 (La.App. 1st Cir.2/10/06), 928 So.2d 549, 554-55, units denied, 2006-0604 (La.5/26/06), 930 So.2d 25, 2007-0481 (La.4/27/07), 955 So.2d 699.
Requiring Strategic to show evidence of compliance with LSA-R.S. 23:1201.1(A)(2) and (A)(3) would not result in absurd consequences nor impair vested rights of Strategic, as even prior to the enactment of LSA-R.S. 23:1201.1, employers were required to send a “Notice of Payment; Form LDOL-WC-1002” to the employee and to the office with the first compensation check.[2] Simply put, this notice requirement does not impose a new procedure enacted in 2013, after the subject accident took place, and Strategic has not produced any evidence that it complied with this long-standing procedural requirement.
For the foregoing reasons, we conclude that the trial court did not err in striking Strategic’s request for a preliminary hearing, as LSA-R.S. 23:1201.1(1) clearly states that an employer who has not complied with the requirements set forth in Subsection A shall not be entitled to a preliminary determination, and Strategic has not produced any evidence that it has complied with the statute.

Award of Supplemental Earning Beneñts

(Assignment of Error No. 2)
In its next assignment of error, Strategic contends that the workers’ compensation judge erred in awarding Albert supplemental earning benefits (“SEBs”) from August 16, 2013 through the date of trial, February 5, 2014. An employee is entitled to receive SEBs if she sustains a work-related injury that results in her inability to earn ninety percent or more of her average pre-injury 19wages. LSA-R.S. *514 23:1221(3)(a). Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn this amount under the facts and circumstances of the individual case. This analysis is necessarily a facts and circumstances one in which the court is to be mindful of the jurisprudential tenet that workers’ compensation is to be liberally construed in favor of coverage. The workers’ compensation judge must take into account all factors which might bear on an employee’s ability to earn a wage in determining whether the injured employee has met her burden of showing an inability to earn ninety percent of her pre-injury wages, including factors such as the employee’s medical condition, efforts at obtaining employment post-injury, and actual work history after the accident. Arretteig v. Our Lady of the Lake Hosp., Inc., 2013-1603 (La.App. 1st Cir.3/21/14), 142 So.3d 1048, 1051-52.
Once the employee has met her burden of proving an inability to earn ninety percent of average pre-injury wages, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs or establish the employee’s earning capacity, must prove, by a preponderance of the evidence: (1) that the employee is physically able to perform a certain job; and (2) that the job was offered to the émployee or that the job was available to the employee in his or the employer’s community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i).
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 557, the Louisiana Supreme Court ruled that an employer may discharge its burden of proving job availability by establishing, at a minimum; the following, by competent evidence:
(1) the existence of a suitable job within the employee’s physical capabilities and within the employee’s or the employer’s community or reasonable geographic region;
(2) the amount of wages that an employee with the injured employee’s experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the employee received notification of the job’s existence.
| ^“Suitable job” means a job that the injured employee is not only physically capable of performing, but one that also falls within the limits of the employee’s age, experience, and education, unless the employer or potential employer is willing to provide any additional necessary training or education. Banks, 696 So.2d at 557.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-elearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Davis v. Cippriani’s Italian Restaurant, 2002-1144 (La.App. 1st Cir.2/14/03), 844 So.2d 58, 59-60, writ denied, 2003-0753 (La.5/9/03), 843 So.2d 403.
At trial, Albert testified that she is a fifty-eight year old widow and currently lives with her son. Her past education *515 and work history includes obtaining her GED and working as a substitute teacher for approximately eighteen years. In 1993, she obtained an associate degree from Delgado Community College for commercial art; however, she was never able to find a job in this field. In 2008, she obtained a medical assistant diploma from Delta College. After finishing medical assistant school, she worked for one year at North Lake Surgical but was laid off because of her typing and spelling skills. Albert testified that she has problems typing because two fingers in her left hand are numb due to a spinal injury that she sustained in 1998. At the time of the trial, she continued to experience “a lot” of pain in her foot and occasionally uses her cane and walker.
|n With regards to her efforts to obtain employment following her fall at Burger King, Albert testified that she has applied for several jobs that she found in the newspaper, and she has applied for all but three of the jobs presented to her by the vocational rehabilitation counselor.[3] Albert testified that she did not apply for the proposed receptionist job at the veterinary clinic because when she called the clinic for more information, she was told that the job requirements would include loading small dogs into kennels and escorting large dogs to the back of the clinic, and she did not think that she was physically capable of performing this job as she still uses her cane to walk. She also did not apply to the proposed security job with Vinson Guard Services because when she called the company, she was informed that the job was not sedentary, as it required frequent standing and rising to check cars in at a gate. Lastly, Albert testified that she did not apply for the proposed job as a collector because she had worked in the past for a telephone collection company and was fired after one day because she was not aggressive enough. .
The vocational rehabilitation counselor, Rusty Pleune, testified that he met with Albert on two occasions. He testified that when he met with Albert, she had not yet seen the pain management physician. He also acknowledged that he has not met with the pain management physician to discuss Albert’s ability to return to work or current physical condition. The information he had about Albert’s physical condition was gleaned from the December 2012 record from the orthopedic surgeon, where she was released to light-duty work.
Notably, the workers’ compensation judge questioned Pleune about whether Albert actually met the job requirements for several of the proposed jobs that he sent to her and whether he knew enough about Albert’s prior job experiences to make such a determination. Specifically, Pleune was questioned as to whether | ^Albert was “familiar with medical terminology” and whether she had “excellent computer skills” as listed in the job description for the jobs at St. Tammany Parish hospital that Pleune sent to Albert. The workers’ compensation judge also questioned Pleune as to whether the proposed job at the Louisiana Heart Hospital was, in fact, “sedentary” as the job description included escorting patients to various areas of the hospital. Lastly, the workers’ compensation judge questioned Pleune as to whether he had reviewed or helped Albert with her resume, to which he responded “no.”
The evidence and testimony regarding Albert’s efforts and ability to obtain a job after her work-related injury required the workers’ compensation judge to make fac *516 tual findings and credibility determinations. Mindful of the great deference owed such credibility determinations on review, and after considering the record as a whole as to Albert’s educational, physical, and psychological limitations, we are unable to say that the workers’ compensation judge was manifestly erroneous or clearly wrong in finding that Albert met her initial burden of proving that her injury resulted in her inability to earn ninety percent of her pre-injury wages. Moreover, we cannot conclude that the workers’ compensation judge was manifestly erroneous or clearly wrong in finding that the positions sent to Albert by the vocational rehabilitation counselor were not “suitable” for Albert, as these findings are all supported by the record.

Calculation of Supplemental Earnings Benefits

(Assignment of Error No. 3)
We next turn to Strategic’s argument that if SEBs are owed to Albert, the trial court erred in its calculation of the amount of benefits owed. Strategic contends that using the stipulated average weekly wage rate of $217.65, Albert should have been awarded SEBs totaling $628.77 a month ($145.00 a week), yet the trial court awarded her $158.00 per week, totaling $684.67 a month.
I isThe formula for calculating supplemental earnings benefits is set forth in LSA-R.S. 23:1221(3)(a)(i) as follows:
(a)(i) For injury resulting in the employee’s inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits, payable monthly, equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed by multiplying his wages by fifty-two and then dividing the product by twelve.
In applying this statutory formula to the facts of this case, we agree with Strategic and find that SEBs should have been awarded in the amount of $628.77 per month ($145.10 per week, not $158.00 per week).[4]
The record is not clear as to how or why the workers’ compensation judge miscalculated the amount of SEBs due to Albert. However, if the workers’ compensation judge used the “minimum compensation” amount described in LSA-R.S. 23:1202(2), as Strategic contends, such would have been in error. Pursuant to LSA-R.S.23:1202(A)(2):
(2) For injuries occurring on or after July 1, 1983, the maximum weekly compensation to be paid under this Chapter shall be seventy-five percent of the aver *517 age weekly wage paid in all employment subject to the Louisiana Employment Security Law, and the minimum compensation for total disability shall be not less than twenty percent of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar. There shall be no minimum compensation for benefits payable pursuant to R.S. 23:1221(3) or (4). In any case where the employee was receiving wages at a rate less | uthan the applicable minimum compensation, the compensation shall be the employee’s “wages”. In no event shall monthly Supplemental Earnings Benefits exceed four and three tenths times temporary total disability benefits. (Emphasis added.)
As noted in the Louisiana Civil Law Treatise, “The comprehensive amendments of 1988 added a sentence to LSA-R.S. 23:1202 to provide specifically that the statutory minimum- is not applicable to supplemental earnings benefits ... and permanent partial disability benefits.” Johnston, Louisiana Civil Law Treatise, Volume 13, Workers’ Compensation Law & Practice, § 278 (5th ed.).
As the record herein is sufficient for this court to determine the correct calculation of SEBs owed to Albert, a remand is not necessary. Accordingly, we hereby amend the judgment to reflect that Strategic is ordered to pay Albert SEBs in the amount of $145.10 per week for the period of August 16, 2013 through the date of trial, plus interest.

Supplemental Earning Benefíts for Time Period After Trial

(Assignment of Error No. 4)
In this assignment of error, Strategic contends that the trial court erred in awarding SEBs to be paid after the February 5, 2014 trial date, as there was no evidence submitted to show Albert’s physical condition, employment status, or ability to earn after February 5, 2014. We disagree.
A similar argument was made and rejected by this court in Washington v. Lyons Specialty Co., 96-0263 (La.App. 1st Cir.11/8/96), 683 So.2d 367, 375, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. As noted by this court in Washington, LSA-R.S. 23:1221(3) imposes conditions under which SEBs shall terminate, and these conditions would not be necessary if the hearing officer only had authority to award benefits through the time of the final decision. Washington, 683 So.2d at 375. Accordingly, we reject these arguments as meritless.
This assignment of error also lacks-, merit.

|1RAward of Penalties and Attorney’s Fees

(Assignment of Error No. 5)
In its last assignment of error, Strategic contends that the trial court erred in awarding Albert $6,500.00 in attorney’s fees and $2,000.00 in penalties because Albert did not meet her burden of proving that the termination of benefits by the employer or insurer was arbitrary, capricious or without probable cause.[5]
Any employer or insurer who at any time discontinues payment of workers’ compensation claims, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed *518 eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. LSA-R.S. 23:1201(1). Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or action of seemingly unfounded motivation. The determination of whether an employer has been arbitrary or capricious or has failed to reasonably controvert a claim is a question of fact subject to the manifest error standard of review. Arretteig, 142 So.3d at 1056.
Here, the workers’ compensation judge found that Strategic’s insurer “terminated [Albert’s] workers’ compensation indemnity payments based on a vocational rehabilitation process that was grossly insufficient.” The judge rejected as pretex-tual Strategic’s purported basis for terminating her compensation benefits, further commenting that, “It was done not to help the claimant obtain employment but to help substantiate the termination of indemnity benefits based on jobs that were not suitable for [Albert] or not available when [Albert] applied.”
In Kelley v. Jack Jackson Const. Co., 32,663 (La.App. 2nd Cir.12/30/99), 748 So.2d 1270, 1275-1276, the court found that an award of attorney’s fees and 11fipenalties was proper where the employer terminated benefits based on information from a vocational rehabilitation counselor who did nothing to assist the claimant in re-entering the workforce other than notifying the claimant by mail of several potential jobs and many of the jobs identified were outside of the claimant’s qualifications.
Likewise, after carefully considering the record on appeal herein, we cannot conclude that the workers’ compensation judge was manifestly erroneous in awarding penalties and attorney’s fees based on its factual conclusion that Strategic terminated Albert’s benefits based solely on information supplied by the vocational rehabilitation counselor, where the vocational rehabilitation process was found to be “grossly insufficient” and done only to “substantiate the termination of indemnity benefits.”
Accordingly, this last assignment of error also lacks merit.
CONCLUSION
For the above and foregoing reasons, we hereby amend the April 23, 2014 judgment, in part, to provide that Strategic is ordered to pay Albert SEBs in the amount of $145.10 per week for the period of August 16, 2013 through the date of trial, plus legal interest, and we affirm the judgment, as amended. All costs of this appeal are assessed to defendants/appellants, Strategic Restaurant Acquisition Co. LLC and New Hampshire Insurance Company.
AMENDED IN PART; AFFIRMED, AS AMENDED.

. The following exchange took place at the hearing on the motion to strike:
Court: So what was sent with the initial payment? Anything? I’m talking about No. 2.
[[Image here]]
It says, Send the Notice of the Initial Indemnity Payment to the injured employee on the same day as the first payment of compensation is made by the payor after the payor has received notice of the claim from the employer. It doesn't say it has to be same 1002 form. That's why I’m asking you did ydu send something? Do you know?
Counsel for Strategic: I don't have any evidence that we sent anything other than the payment.

. Form LDOL-WC-1002 was originally promulgated by the Department of Labor, Office of Workers' Compensation Administration, in accordance with LSA-R.S. 23:1310.1, in February 1999. The form specifically states “This form is to be completed by the Employer/Insurer and sent to the injured employee with the first check or within 10 days of suspension/modification and/or change to SEB. A copy must be sent to the Office of Workers’ Compensation Administration within 10 days of the effective date.” See L.R. 25:2 (February 1999).

. Albert testified that she has not been contacted by Strategic about returning to work for the company, and Strategic did not offer any evidence to dispute this testimony.

. The calculation described by LSA-R.S. 23:1221(3)(a)(i) applied to the facts of this case is as follows:
$217.65 (average weeldy wage) x 52 (weeks in ayear) = $11,317.80
$11,317.80 h- 12 (months in a year) = $943.15
$943.15 = pre-accident monthly wages
$943.15 — $0.00 (post-accident monthly wages) = $943.15
$943.15 x 66 2/3% = $628.76666 ... ($628.77 rounded)
The calculation for determining the weekly amount is:
$628.77 x 12 = $7,545.24
$7,545.24 4 52 = $145.10

. Strategic does not allege in its assignments of error that the amount of attorney’s fees and penalties awarded was excessive.