# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2019 CA 0608

JOHN VESSEL

VERSUS

CB&I

*PMc by JEW*
*JEW*
*GH*

**Judgment Rendered:    SEP 0 2 2020**

* * * * * *

On Appeal from the Office of Workers' Compensation
In and for the Parish of West Feliciana
District 5
State of Louisiana
Docket No. 17-05555

Honorable Jason Ourso, Judge Presiding

* * * * * *

Brad O. Price
Denham Springs, Louisiana

Counsel for Plaintiff/Appellee
John Vessell

John J. Rabalais
Matthew D. Crumhorn
Megan C. Gladner
Covington, Louisiana

Counsel for Defendant/Appellant
CB&I

* * * * * *

**BEFORE:  McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**McCLENDON, J.**

Following a trial on the merits, plaintiff/appellee was awarded workers' compensation benefits in connection with a back injury he suffered after lifting and moving heavy materials in the course of his employment with the defendant/appellant. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

John Vessel[1] ("plaintiff") began working for Chicago Bridge and Iron ("CB&I") on April 18, 2017. Although plaintiff was hired as a warehouse journeyman, his primary duty was driving trucks. Plaintiff testified that the alleged accident occurred when he assisted his foreman, David Shade, in physically lifting and moving steel beams or girders. Plaintiff felt a "pop" and experienced pain through his mid lower back. The date of the alleged accident herein is unclear, as plaintiff did not immediately file an accident report, and did not recall the exact date he was injured. However, plaintiff believed that the accident happened in June, shortly after midnight while working the night shift. Plaintiff testified that he completed his shift and returned home before he reported to the emergency department at West Feliciana Parish Hospital ("West Feliciana").

West Feliciana medical records reflect that at 12:04 on June 5, 2017, plaintiff complained of moderate back pain with an acute onset for the past few or past three days, beginning after plaintiff worked thirteen consecutive days. On June 16, 2017, plaintiff sought treatment with his primary care physician, Dr. Ernest Gene Thompson, Jr. Medical records from this visit reflect that plaintiff complained of "slight right [costovertebral angle] tenderness," i.e., lower right back pain, and flank[2] pain beginning a week prior. Dr. Thompson also provided plaintiff with a work excuse permitting plaintiff to return to work on June 17, 2017. On June 29, 2017, plaintiff reported to the Lane Regional Medical Center ("Lane") emergency department for acute moderate pain to "upper/mid back episodic over last [two] weeks." Dr. Thompson's records and the

---

[1] Plaintiff's surname is spelled both "Vessel" and "Vessell" throughout the record. We use the spelling reflected on plaintiff's Louisiana commercial driving license, "Vessel," herein.

[2] Dr. Thompson explained that the term "flank" means "[w]here the kidneys are, below the rib cage, laterally, lateral to the spine," and that the flank is part of the back, though flank pain is distinguished from spinal pain.

Lane records did not reference the mechanism of plaintiff's injury, though the Lane records reflect that plaintiff denied trauma or other injury.

On July 8, 2017, plaintiff's foreman Mr. Shade requested that plaintiff complete an employee disciplinary record citing absenteeism. Plaintiff did so, writing in the employee comment section that he missed work due to hurting his back in a work accident, specifically, "pulled muscles in my back from lifting on [beams] in [l]aydown." Although plaintiff provided CB&I with a work excuse from Our Lady of the Lake Hospital dated July 8, 2017, a second employee disciplinary record citing absenteeism was completed on July 11, 2017.[3]

Plaintiff was transferred from the warehouse department to the crane and rigging department on July 18, 2017. Prior to the transfer, plaintiff had been driving a new truck. After the transfer, plaintiff was given an "old yard dog" truck to drive. Plaintiff testified that the older truck had "no shocks, no springs, no air ride, no nothing" and was a "real, real rough riding," which caused his back pain to worsen. Less than a week after plaintiff began driving the yard dog truck, on July 23, 2017, plaintiff visited Prime, CB&I's on-site medical care facility. Plaintiff recounted that when he reported his injury to Prime, he was given a choice between Advil and Tylenol and sent back to work.

Medical records reflect that plaintiff sought treatment for back pain at least three more times in the following month. On July 24, 2017, plaintiff sought treatment at the West Feliciana emergency department. Plaintiff complained of acute, moderate back pain that began the day before. The medical records specifically documented "[r]ight sided back pain from driving 'old truck' at a plant daily," "[r]ight paraspinal muscles are tight and tender to palpation," and that plaintiff "was seen here on [June 5, 2017] for same issue on same side." Plaintiff again reported to the West Feliciana emergency department on July 31, 2017 with complaints of "lingering right-sided lower back and right flank pain for past month or so," and on August 23, 2017, with complaints of bilateral lower back pain caused by a truck he was driving for work four weeks prior.

---

[3] This record was signed on behalf of CB&I by David Summers. However, David Summers did not become plaintiff's supervisor until he was transferred from the warehouse department to the crane and rigging department on July 18, 2017.

Additionally, plaintiff contacted Dr. Thompson's office twice by phone seeking treatment for back pain. Dr. Thompson's medical records document that plaintiff called on July 27, 2017, but was advised that Dr. Thompson did not handle workers' compensation claims. Dr. Thompson's office provided plaintiff with a July 31, 2017 medical work excuse, restricting plaintiff to light duty until further notice due to "illness." Dr. Thompson's medical records also reflect that Plaintiff called on August 1, 2017.

In the interim, plaintiff reported to work on July 28, 2017. Though CB&I's records reflect that plaintiff worked 10.5 hours, plaintiff testified that he was sent home because CB&I did not have light duty available. CB&I's records reflect that plaintiff was terminated "for cause" on July 28, 2017, and a separation evaluation was completed on August 17, 2017. On September 5, 2017, plaintiff filed a disputed claim for compensation.[4]

On September 18, 2017, plaintiff was treated by Dr. Samer Shamieh. The medical records state that plaintiff presented with "[w]ork injury while lifting beams to put on a fork lift." The records additionally note that "[p]hysical exam reveals tenderness to palpation of the lumbar spine and loss of [range of motion] as well as palpable muscle spasms." Dr. Shamieh recommended that plaintiff undergo L4-5-S1 TFESI (transforaminal epidural steroid injection) with Dr. Sean Graham.

Plaintiff returned to the West Feliciana Parish Hospital emergency department on September 23, 2017. An MRI revealed bulging discs and spinal stenosis. The emergency department physician explained to plaintiff that he needed to see a specialist because the emergency department was not equipped to offer treatment for his condition. On October 7, 2017, plaintiff again reported to the West Feliciana Parish Hospital emergency department with complaints of back pain.

On October 19, 2017, plaintiff was treated by Dr. Graham. Dr. Graham's records reflect that plaintiff complained of back pain caused by a work-related injury in June of 2017 when plaintiff was lifting steel beams with a coworker. Dr. Graham further noted

---

[4] The claim form identified the date of plaintiff's injury as July 23, 2017, "at lay down 6 at Shintech in Plaquemine." The description of the accident and injury read "[d]uring an off time, supervisor had [plaintiff] help move beams and [he] hurt his back while doing so." Plaintiff alleged that no wage benefits had been paid and no medical treatment had been authorized, and sought penalties, costs, attorney's fees, and judicial interest.

that plaintiff "began to have pain within hours of lifting" and "continued to work through July driving a yard dog which worsened his pain." Plaintiff returned to Dr. Graham on November 15, 2017; December 12, 2017; January 9, 2018; February 7, 2018; and May 1, 2018.

On March 20, 2018, plaintiff submitted to an examination by Dr. Alan Schroeder for the purposes of obtaining a second medical opinion ("SMO"). Dr. Schroeder opined that "[plaintiff's] current back pain is not related to any one specific work episode lifting a beam." Dr. Schroeder reported that he believed plaintiff was at maximum medical improvement.

The issues of whether an accident occurred and whether plaintiff sustained an injury were presented to the workers' compensation judge ("WCJ") at a trial on the merits on August 28, 2018. At the conclusion of the trial, the WCJ ruled from the bench in favor of plaintiff. The WCJ found that an accident occurred on June 4, 2017, when plaintiff lifted a pipe in the course and scope of his employment with CB&I.[5] The WCJ further found that plaintiff sustained an injury to his lower back as a result of the accident. The WCJ cast CB&I in judgment for supplemental earnings indemnity benefits, medical expenses, and all costs of the proceedings. The WCJ executed a written judgment consistent with the oral ruling on September 13, 2018, and issued the written judgment together with written reasons for judgment. The written reasons, set forth below, emphatically detailed the WCJ's finding that plaintiff was credible:

> The Court tried this case and ruled from the bench on August 28, 2018, and defendant requested written reasons thereafter. All evidence was thoroughly reviewed and the main issue in the case was addressing the credibility of the claimant as concerns the occurrence of an accident as provided by law. The Court had the opportunity to listen to the claimant live at trial and consider all other evidence. The Court specifically points out that this is an unsophisticated employee mainly employed as a truck driver and other manual labor his whole life. Given all of the circumstances, the Court makes a specific factual finding that the claimant was credible. This finding is based upon the Court listening and observing claimant testify in trial, including but not limited to his deportment, mannerisms, facial expressions, tone of voice, demeanor, composure, answers to questions, reactions to questions, and considering and comparing claimant's version of events with all other evidence at trial.

---

[5] Concluding that the accident occurred on June 4, 2017, the WCJ clearly considered plaintiff's testimony that he sought medical treatment at West Feliciana the day after the accident together with the June 5, 2017 West Feliciana medical records documenting a connection between plaintiff's back pain and a work accident.

5

The Court finds that the claimant proved an accident occurred on June 4, 2017, wherein he assisted his foreman, Mr. David [Shade], in lifting some extremely heavy pipes, iron beams, or other metal industrial construction materials, rather than using a forklift, crane, or other mechanical lifting device appropriate and required for employee safety reasons under the circumstances. This lifting act was an unsafe activity at the defendant's premises directed by defendant's foreman over claimant. Thereafter, the circumstances corroborate said accident and claimant's lower back injury as a result thereof. Claimant's hospital emergency room record on the day after the accident shows he reported a back injury generally caused by work. It does not specifically give the details of the accident, but in general this medical record at least shows the claimant complained of his injury being work related. Although there was testimony of the claimant not reporting the accident, defendant's own employee and supervisor, Mr. Gary Ourso, (no known family relationship to the undersigned judge) testified the claimant reported the accident to him at some point in time, he directed him [to] the safety/medical office on site, and watched claimant enter said office.

As concerns injuries, this Court makes a specific finding that claimant's lower back injury was caused by this accident due to extremely heavy lifting and medical treatment therefore is awarded. The Court further finds that the claimant has proven SEB is due at the maximum rate starting from July 31, 2017. As concerns penalties and attorney's fees, the Court finds that the matter was reasonably controverted by the employer; therefore, penalties and attorney['s] fees are denied. Legal interest is awarded in accordance with law and all court costs assessed at defendant's costs.

CB&I then appealed this judgment, raising the following assignments of error:

1. The WCJ erred in finding an accident occurred on June 4, 2017.

2. The WCJ erred in finding the June 4, 2017 accident caused a compensable and identifiable injury.

3. The WCJ erred in finding plaintiff is entitled to supplemental earning benefits in the amount of $657.00 per week starting July 31, 2017 to present.[6]

**RULE TO SHOW CAUSE**

On September 3, 2019 this Court issued an *ex proprio motu* rule to show cause order noting that the judgment executed by the WCJ did not specify the amount of medical expenses awarded, and directing the parties to show cause whether the appeal should be dismissed for lack of a final appealable judgment. The rule to show cause was referred to the appeal panel. On December 18, 2019, this Court issued a limited remand order allowing the WCJ to issue a judgment containing sufficient specificity. The record was supplemented with an appropriately amended judgment on January 7, 2020, and this court maintained the appeal.

---

[6] This was identified as CB&I's second assignment of error on appeal. We present and consider the assignments of error out of order for ease of discussion.

6

## STANDARD OF REVIEW

Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. **Lizana v. Gulf Coast Pain Inst.**, 2003-1672 (La.App. 1 Cir. 5/14/04), 879 So.2d 763, 765. In a workers' compensation case, as in other civil cases, this court's review of factual findings is governed by the manifest error or clearly wrong standard. **Williams v. Temple Inland, Inc.**, 2008-2153 (La.App. 1 Cir. 12/23/09), 30 So.3d 760, 761. In applying the manifest error-clearly wrong standard, this court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. This is true even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. **Albert v. Strategic Restaurants Acquisition Co. LLC**, 2014-1001 (La.App. 1 Cir. 12/23/14), 168 So.3d 507, 514.

## LAW AND DISCUSSION

The Workers' Compensation Act provides coverage to a worker for personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A). A worker must prove the chain of causation required by the workers' compensation statutory scheme: he must establish by a preponderance of the evidence that the accident[7] was work-related, that the accident caused the injury, and that the injury[8] caused the disability. **Namias v. Sunbelt Innovative Plastics, LLC**, 2015-1380 (La.App. 1 Cir. 2/24/16), 190 So.3d 745, 752, writ denied, 2016-0482 (La. 5/2/16), 212 So.3d 1168. While the workers' compensation laws are to be construed

---

[7] An "accident" is defined in LSA-R.S. 23:1021(1) as follows: "'Accident' means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration."

[8] An "injury" is generally defined in LSA-R.S. 23:1021(8)(a) as follows: "'Injury' and 'personal injuries' include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted."

liberally in favor of the worker, that interpretation cannot lessen the worker's burden. *Id.* at 753.

On appeal, CB&I challenges the trial court's findings on the issues of accident and injury. CB&I primarily argues that plaintiff failed to carry his burden of proof regarding both issues because the only evidence he presented in support of his claim was his own self-serving testimony, and CB&I produced evidence that discredits plaintiff's version of the account. Accordingly, this court will examine the evidence presented by plaintiff to determine whether he met his burden of proving that, more probably than not, an accident occurred which resulted in his injury. If there is evidence indicating a reasonable possibility of the occurrence of an accident and a causal connection between the accident and plaintiff's injury, then the WCJ's factual finding concerning this issue cannot be "clearly wrong" and cannot be overturned by this court. See **Dubuisson v. Amclyde Engineered Prod. Co.**, 2012-0010 (La.App. 1 Cir. 12/31/12), 112 So.3d 891, 896.

**Occurrence of an Accident**

A worker's testimony alone may be sufficient to discharge his burden of proving an accident, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. **Namias**, 190 So.3d at 753. Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. **Hayes v. Louisiana State Penitentiary**, 2006-0553 (La.App. 1 Cir. 8/15/07), 970 So.2d 547, 554-55, writ denied, 2007-2258 (La. 1/25/08), 973 So.2d 758.

CB&I argues that plaintiff's failure to file an accident report undermines plaintiff's assertions that an accident occurred. However, the jurisprudence is well-settled on the issue of failure to immediately report an accident. The fact that an employee does not notify his employer immediately that he suffered an accident does not prohibit a finding that the employee sustained an accident. **Haws v. Prof'l Sewer Rehab., Inc.**, 1998-2846 (La.App. 1 Cir. 2/18/00), 763 So.2d 683, 688. Further, the fact that a claimant does not realize or diagnose the full extent of his injury immediately after an accident

8

should not bar him from recovery. **Crawford v. Pontchartrain Materials**, 2006-1780 (La.App. 1 Cir. 3/28/07), 960 So.2d 946, 950. Nor should the claimant or any other employee be penalized for trying to work as much as he can, despite the pain. **Middleton v. Int'l Maint.**, 1995-0238 (La.App. 1 Cir. 10/6/95), 671 So.2d 420, 424, writ denied, 1995-2682 (La. 1/12/96), 667 So.2d 523. Thus, the fact that plaintiff did not immediately report the June 4, 2017 accident did not preclude the trial court's finding that the accident occurred.

CB&I also contends that plaintiff's medical records[9] contradict plaintiff's claims that a work accident occurred. CB&I points out that the Lane medical records dated June 29, 2017 reflect that plaintiff denied trauma or injury, and that the medical records as a whole do not describe the mechanism of the accident until plaintiff's visit with Dr. Shamieh on September 18, 2017. However, the trial court correctly noted in its written reasons that although the June 5, 2017 West Feliciana medical records do not describe the specific mechanism by which plaintiff was injured, they do reflect that plaintiff was injured in connection with his employment. The West Feliciana medical records from July 24, 2017 and August 23, 2017, as well as Dr. Thompson's July 27, 2017 note that plaintiff had been advised that Dr. Thompson did not accept workers' compensation cases, further link plaintiff's medical complaints with his employment. The medical records therefore provide two permissible views of the evidence, establishing a reasonable basis for the trial court's finding that a work accident occurred.

CB&I further asserts that witness testimony impeached plaintiff's allegations of the June 4, 2017 accident. Plaintiff and Mr. Tommy Brown, a co-worker, were the only witnesses called to testify live at trial. CB&I produced the deposition testimony of several witnesses: Mr. Shade, the foreman plaintiff was working with at the time of the alleged accident; Lorenzo Cooper, the safety supervisor; Thomas Soloway, a construction manager; and Gary Ourso, also a foreman. However, the witness

---

[9] On January 21, 2020, this Court issued an *ex proprio motu* order directing CB&I to supplement the appellate record with the exhibits accepted into evidence at the trial of this matter. CB&I failed to comply. Ultimately, the workers' compensation court supplemented the appellate record with the requested exhibits.

testimony did not consistently contradict plaintiff's claims; to the contrary, Mr. Soloway, Mr. Ourso, and Mr. Brown directly corroborated plaintiff's allegations.

At trial, Tommy Brown testified that he worked at CB&I with plaintiff. Mr. Brown recounted that plaintiff told him that he'd injured his back. Mr. Brown also recalled overhearing plaintiff's telephone conversations with plaintiff's sister, during which plaintiff spoke of back problems caused by lifting something in the pipe yard and by a "rough-driving truck." Mr. Brown also testified that he had seen plaintiff laying on a bench in the break room because his back was bothering him. Plaintiff testified that he believed he told Mr. Shade that he had been hurt before leaving his shift the day of the accident, but was not sure. During Mr. Shade's deposition, he stated that he recalled lifting girders in the laydown yard with plaintiff, but he did not recall plaintiff lifting pipes or beams, nor did he recall plaintiff complaining that he had been injured. Mr. Shade's denial that he was aware of plaintiff's claims of an accident was questioned in light of the July 8, 2017 disciplinary report, which Mr. Shade had signed and on which plaintiff described hurting his back lifting beams. Mr. Shade stated that he had signed the disciplinary report but claimed not to have read it. Mr. Shade did, however, remember plaintiff saying that driving the yard dog truck was hurting his back.

Mr. Soloway recalled plaintiff saying that he had previously hurt his back lifting a beam, and that the yard dog truck he had been given to drive was hurting his back. Mr. Soloway asked plaintiff whether he had reported the injury to his supervisor. Plaintiff told Mr. Soloway that he had not reported it, and Mr. Soloway advised plaintiff that he should.

Gary Ourso was a foreman at CB&I from June 23, 2017, through July 19, 2017. Mr. Ourso testified during his deposition that plaintiff told him that he had hurt his back and "nobody wanted to do anything about it." Mr. Ourso recalled plaintiff saying that he injured his back while lifting a beam with David Shade, and that the yard dog truck was "rough riding" and hurting plaintiff's back. Mr. Ourso immediately instructed plaintiff to report the injury to safety. Mr. Ourso testified that he then watched plaintiff walk into Prime, CB&I's on-site medical facility. Further, Mr. Ourso stated that he "[didn't] think David [Shade] and John Vessel got along too good."

10

Plaintiff also maintained that he reported his injury several times to Mr. Cooper, the safety supervisor, though he could not recall when. Mr. Cooper did not remember plaintiff reporting an injury to him. However, Mr. Cooper did recall plaintiff telling him that he was dissatisfied with the older truck.

Regarding Prime, Mr. Cooper testified that if plaintiff reported an injury he should have been brought to Prime and the issue should have been reported to the safety department. Further, Mr. Cooper stated that Prime should have records if an employee "stepped foot" in Prime and reported an injury. CB&I produced one note from Prime, dated July 23, 2017, which documented that plaintiff sought treatment. Plaintiff testified that he believed he had gone to Prime twice, and that this note was from the second visit. As noted above, Mr. Ourso testified that he had watched plaintiff walk into Prime. Mr. Ourso's last day at CB&I was July 19, 2017, which predated the July 23, 2017 Prime record. Thus, Mr. Ourso's testimony supports plaintiff's claims that he reported to Prime twice, and indicates that Prime failed to record one of those visits in contradiction of Mr. Cooper's explanation of CB&I's policy. In addition, Mr. Cooper was presented with plaintiff's June 16, 2017 work excuse during his deposition, and testified that he had never seen the work excuse before. Mr. Cooper also stated that plaintiff's foreman should have given the excuse to safety upon receipt. This testimony suggests that CB&I did not follow their own safety policy, and moreover, is consistent with plaintiff's statements to Mr. Ourso that no one at CB&I would address his injury.

As set forth above, when there are two permissible views of the evidence, the WCJ's factual finding concerning this issue cannot be "clearly wrong" and cannot be overturned by this court. See **Dubuisson**, 112 So.3d at 895. In this matter, there are clearly two permissible views of the evidence. CB&I correctly argues that plaintiff did not immediately report an accident and that plaintiff's earliest medical records do not describe the mechanism of plaintiff's injury. However, plaintiff presented ample evidence supporting his claims: plaintiff testified to the occurrence of the accident; there are medical records linking plaintiff's complaints to a work accident; the July 8, 2017 disciplinary report contains plaintiff's written statement describing the accident; Mr. Ourso and Mr. Soloway testified that plaintiff told them he had been hurt lifting a

beam at work, and that driving the yard dog truck had aggravated that injury; and Mr. Brown testified that he overheard plaintiff tell the same story to his sister. Corroboration of the worker's testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. **Hayes**, 970 So.2d at 555. This evidence can be found to reasonably corroborate the plaintiff's account of the unwitnessed and unreported accident. Thus, given plaintiff's testimony, the corroborative evidence, and the WCJ's specific determination that plaintiff was a credible witness, the WCJ's finding that an accident occurred on June 4, 2017, was reasonably supported by the record and we cannot say that it was manifestly erroneous. We therefore affirm the WCJ's finding that a work-related accident occurred. See **Namias**, 190 So.3d at 754. This assignment of error lacks merit.

## Causation of Injury

Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the fact finder based on all credible evidence. **Harrison v. Baldwin Motors**, 2003-2682 (La.App. 1 Cir. 11/3/04), 889 So.2d 313, 316, writ denied, 2005-0249 (La. 4/1/05), 897 So.2d 609. An employee's work-related accident is presumed to have caused his disability when the claimant proves that before the accident, he had not manifested his disabling symptoms; that commencing with the accident, disabling symptoms appeared; and that there is either medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition. **Dubuisson**, 112 So.3d at 896.

In this matter, plaintiff presented the trial court with proof that he had not manifested symptoms prior to the June 4, 2017 accident. During Dr. Thompson's deposition, he was asked whether plaintiff ever sought treatment for complaints related to his back or spine prior to 2017. Dr. Thompson testified that plaintiff had not.[10] Additionally, CB&I produced pre-employment health screens and questionnaires completed by plaintiff for the years 2012, 2013, 2015, 2016, and 2017. Each set of

---

[10] Although Dr. Thompson's medical records reflected that plaintiff reported three days of thoracic back pain during an April 14, 2015 visit, Dr. Thompson affirmatively distinguished between the previous thoracic pain, which involves the area around the rib cage, and plaintiff's current complaints of lumbar pain, which involves the lower back.

records affirmatively reflected that plaintiff did not have a history of back injury or back pain.

As to whether the accident caused plaintiff's injury, as with the issue of whether an accident occurred, evidence was presented supporting two permissible views of the evidence. Dr. Schroeder diagnosed plaintiff with low back pain and lumbar degenerative disc disease. Dr. Schroeder noted that plaintiff did not report the mechanism of his injury as the lifting accident until September of 2017, and opined "that is not felt to be a history of an episode at work documented in the records in a timely fashion as there are other reports which document no specific injury." Dr. Schroeder's opinion was that plaintiff's "current back pain [was] not related to any one specific work episode lifting a beam," and he recommended no additional treatment. Dr. Schroeder also found evidence of "symptom exaggeration and/or somatic complaints."

However, Dr. Graham believed otherwise. Dr. Graham was tendered as an expert in the field of pain management. Dr. Graham first saw plaintiff on October 19, 2017, on referral from Dr. Shamieh. Dr. Graham confirmed that the MRI findings of bulging discs and spinal stenosis could be caused or aggravated by lifting a heavy object. Dr. Graham explained that the degenerative changes seen on plaintiff's MRI were expected after age thirty, and that an MRI does not always show evidence of an acute injury, concluding "there's nothing really truly objective that you could say on an MRI is, haha [sic], that's new or that's old." Dr. Graham also essentially testified that plaintiff's complaints and symptoms were consistent with a lifting injury and not a degenerative condition. He stated that the mechanics of a lifting injury are more likely to cause a lumbar disc injury, and such an injury is likely irritated by sitting with flexed legs as when driving a truck. In contrast, degenerative conditions are less painful in a sitting position. Dr. Graham also stated that if there were no lifting accident, driving an older truck without substantial shocks could be enough to aggravate or exacerbate plaintiff's conditions in his lumbar spine. Dr. Graham treated plaintiff with prescriptions, physical therapy, and behavior modifications in the form of work restrictions. Dr. Graham restricted plaintiff to light duty at work, and stated that he would restrict plaintiff from sitting for longer than thirty minutes at a time. Dr. Graham also reviewed Dr.

13

Schroeder's report and affirmatively stated that he disagreed with Dr. Schroeder's opinion that plaintiff was at maximum medical improvement.

CB&I argues extensively that the June 5, 2017 West Feliciana Parish Hospital medical records identify plaintiff's complaint as "flank pain," and therefore contradict his testimony that he injured his back. However, these arguments are misleading. While the medical records state in part that plaintiff's chief complaint is flank pain, the records immediately and repeatedly afterwards reflect that plaintiff reported "[b]ack pain, right lumbar paraspinal musculature." Further, as noted above, the medical records went on to specifically document that plaintiff sought medical attention for back pain. We additionally note that plaintiff testified that he does not know what the term "flank pain" means.

The record reflects contradictions regarding whether plaintiff's injury was caused by the June 4, 2017 accident. However, the WCJ may have simply found plaintiff to be a poor historian, noting that plaintiff was an unsophisticated employee who had been employed as a manual laborer his entire life. Further, the WCJ made a specific factual determination of plaintiff's credibility, and chose to assign greater weight to plaintiff's testimony and to the evidence plaintiff offered in support of his case. Given plaintiff's testimony and the expert witness deposition of Dr. Graham, as well as the medical records and lay witness testimony linking plaintiff's injury with the accident as set forth in the previous section, the WCJ had a reasonable basis to support his findings. Moreover, our review of the record in its entirety does not indicate that this finding was clearly wrong. Therefore, we cannot say that the WCJ's finding that plaintiff sustained injuries to his back as a result of the June 4, 2017 accident was unsupported by the record and therefore manifestly erroneous. As such, we affirm the WCJ's finding that a work-related accident occurred on June 4, 2017 and resulted in injuries to the plaintiff's lower back.

**Entitlement to Supplemental Earnings Benefits**

As an assignment of error on appeal, CB&I challenges the trial court's award of SEB to plaintiff in the amount of $657.00 per week starting July 31, 2017 to present. However, CB&I does not address the merits of this assignment of error beyond arguing

14

that plaintiff is not entitled to compensation benefits because he did not prove an accident and injury. Having found no merit in CB&I's assignments of error regarding the occurrence of an accident and an injury caused by same, and being presented with no other arguments regarding this assignment of error, we accordingly find this assignment of error lacks merit.[11]

## CONCLUSION

For the above and foregoing reasons, the January 7, 2020 judgment of the workers' compensation judge is affirmed in all respects. Costs associated with this appeal are assessed against defendant-appellant, CB&I.

**APPEAL MAINTAINED; AFFIRMED.**

---

[11] We note that Rule 1-3 of the Uniform Rules of Louisiana Courts of Appeal provides, and our jurisprudence generally establishes, that this Court's review is limited to those issues that were submitted to the trial court and that are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise. **Bezou v. Bezou,** 2015-1879 (La.App. 1 Cir. 9/16/16), 203 So.3d 488, 493, writ denied, 2016-1869 (La. 12/5/16), 210 So.3d 814. Additionally, Rule 2-12.4(B)(4) of the Uniform Rules of Louisiana Courts of Appeal provides that "[a]ll assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." This assignment of error was not briefed, and could therefore also be found abandoned.